296 So.2d 673 (1974)
Helen Fulgham BUTLER
v.
STATE of Mississippi.
No. 47941.
Supreme Court of Mississippi.
June 10, 1974.
Rehearing Denied July 15, 1974.
Tubb, Stevens & Morrison, West Point, for appellant.
A.F. Summer, Atty. Gen. by Billy L. Gore, Sp. Asst. Atty. Gen., Jackson, for appellee.
INZER, Justice:
Helen Fulgham Butler was indicted, tried and convicted in the Circuit Court of Clay County for the crime of murder in the killing of Mrs. JoAnn Brewer. She was sentenced to life imprisonment in the State Penitentiary. From that conviction and sentence, she appeals. We affirm.
At about 6:15 p.m. on February 6, 1973, Constable McKee received a message that there had been an automobile accident on the Cedar Bluff and Starkville Road in Clay County. He went immediately to the scene and found the automobile of Mrs. JoAnn Brewer in a ditch on the side of the road. Upon investigation, he found that Mrs. Brewer had been shot. She had multiple gunshot wounds, two in the head, one in the neck and one directly through the *674 heart. An examination of the body by a pathologist revealed powder burns indicating the bullet that entered the left side of the head was fired at close range. The pathologist removed three bullets from the body of Mrs. Brewer and these bullets revealed that Mrs. Brewer had been shot with a .22 caliber gun. The bullets were turned over to Sheriff Virgil Middleton of Clay County.
During the course of his investigation, Sheriff Middleton received information that gave him reason to believe that Mrs. Helen Butler knew something about the shooting. On the following day, he together with Deputy McNeel, Investigator Bowen and Sheriff Kellum of Oktibbeha County went to the place where Mrs. Butler worked in Starkville. After being advised of her Miranda rights, Mrs. Butler denied that she knew anything about the shooting, but she voluntarily went with the sheriff to her home and turned over to him a .22 caliber pistol which belonged to her husband John Butler. This pistol was fully loaded, and it together with the bullets removed from the body of Mrs. Brewer were carried to the State Crime Laboratory by Deputy McNeel.
On February 9, 1973, Sheriff Middleton made an affidavit before W.H. Bird, Justice of the Peace, charging Mrs. Butler with the murder of Mrs. Brewer. A warrant was issued for the arrest of Mrs. Butler. At about 5:30 p.m. on that date, Mrs. Butler was arrested by Sheriff Kellum of Oktibbeha County. Mrs. Butler was warned of her Miranda rights and placed in the custody of Sheriff Middleton. Sheriff Middleton then transported Mrs. Butler to West Point where they arrived at about 6 p.m. She was carried to the old Loving law offices, which had been temporarily used as the sheriff's office. Mrs. Butler was again given her Miranda rights, and she signed a waiver of these rights. She was then questioned by Sheriff Middleton and Investigator Bowen from about 6:30 to about 8 o'clock. A short time later, Bill Harpole, an investigator for the Attorney General's Office, and Daniel Davis, an investigator for the Highway Patrol, began questioning Mrs. Butler. At about 9:30 p.m. after Mrs. Butler had talked with her husband and father, she orally confessed to the crime and wrote out in her own handwriting a statement in which she described how she committed the crime. In the statement, she said the crime was planned by Walker Brewer, husband of the deceased, with whom she had been going for about a year. According to plan, Mrs. Butler called Mrs. Brewer and told her that she had information that her husband was going with another woman, and if she would meet her after work, she would take her and show her with whom he was going. Mrs. Brewer agreed to meet her on the road on which the body was found. When Mrs. Brewer arrived and stopped in front of Mrs. Butler's car, Mrs. Butler got out and walked up to the car. Mrs. Brewer rolled down the window, and Mrs. Butler fired one shot into the side of her head. Mrs. Brewer's car rolled forward into the ditch, and Mrs. Butler said she then shot her again. She does not remember how many shots she fired. Then according to plan, she took Mrs. Brewer's purse to make it look like robbery, got into her car and drove home. She said she then emptied the gun and flushed the hulls down the toilet and reloaded the gun. A short time later, she left home to go to a PTA meeting at the school. On the way to the meeting, she threw the purse out of the car at the county lake on the left side of the road and went on to the meeting. On the following day, Officer Harpole went to the place where Mrs. Butler said she had thrown the purse and found it. Prior to trial, counsel for Mrs. Butler filed a motion to suppress certain evidence. Included was the confession, the .22 caliber pistol and the purse of Mrs. JoAnn Brewer. This motion alleged that the oral and written statements made by Mrs. Butler were taken as the result of an illegal arrest, that the statement was not voluntarily given under the totality of the circumstances under *675 which it was taken, that she was subjected to gruelling custodial interrogation without the presence of her attorney in violation of her constitutional rights, that she was forced to sign the statement under the compelling influence of the rigid interrogation thereby abridging her right to protection from self incrimination, and that improper promises and assurances were given as inducements for her to sign the statement. The motion also alleged that the firearm was unlawfully seized.
A hearing was had on the motion to suppress. The trial court overruled the motion and held that the confession was freely and voluntarily given. The court also held that the firearm was voluntarily turned over to the sheriff. Upon the trial of the case, the confession, the purse and .22 caliber pistol were admitted into evidence over the objection of the appellant.
The principal contentions on appeal are that the trial court was in error in overruling the motion to suppress the evidence and appellant's objection to the introduction of the confession, purse and the pistol. Appellant urges that there was no probable cause shown for the issuance of the warrant for her arrest, that her arrest was illegal, that the confession was obtained as a result of the illegal arrest and that the illegal arrest either fatally poisoned the statements or was such a factor that when taken with the other facts in the case, destroyed the voluntariness of the confession.
Since the legality of the arrest is at least a factor to be considered in determining whether the confession was voluntary, we must first determine whether the arrest was legal. The arrest in this case was the result of a warrant issued by the magistrate, based upon an affidavit which simply recited that "Helen Butler did wilfully, unlawfully and feloniously kill and murder a human being, to-wit: JoAnn Brewer." The state admits that the affidavit standing alone would not be sufficient to support a finding by the magistrate that probable cause existed for the arrest but points out that the magistrate did not rely solely on the affidavit. He took sworn testimony of the officer to ascertain whether probable cause existed for the arrest, and the magistrate found from this testimony that probable cause did exist for the issuance of the warrant. We held in Prueitt v. State, 261 So.2d 119 (Miss. 1972), and Boyd v. State, 204 So.2d 165 (Miss. 1967), that the magistrate instead of relying solely on the affidavit may take sworn testimony to ascertain whether there is probable cause for the issuance of the warrant. This the magistrate did in this case. Sheriff Middleton was placed under oath, and he testified to the facts that led him to believe that Helen Butler killed JoAnn Brewer. So, the question presented is whether the evidence presented to the justice of the peace was sufficient to justify a man of average caution to believe that Mrs. Butler committed the crime. After a careful review of the evidence, we find that although it is a close question, the information furnished by the sheriff was not sufficient for a detached neutral magistrate of average caution to believe Mrs. Butler committed the crime. The evidence raises a strong suspicion, but suspicion does not meet the constitutional standard of probable cause. Strode v. State, 231 So.2d 779 (Miss. 1970).
The fact that the arrest in this case was without probable cause does not automatically render the confession inadmissible, but it does require an examination of the facts to determine what effect the illegal arrest had upon the giving of the confession. Bell v. State, 274 So.2d 371 (Miss. 1973); Keith v. State, 197 So.2d 480 (Miss. 1967).
The record in this case reveals that Mrs. Butler is a mature woman 32 years of age and a high school graduate. She had considerable work experience as a telephone operator in Starkville, at a bank in Maben on two different occasions and a bank in Vicksburg, at a concrete and auto *676 parts company in Vicksburg, and for the past three years at the Coca-Cola Bottling Plant in Starkville. She was active in PTA work and other outside activities. There is no contention in this case that Mrs. Butler was weak mentally, but it is contended that she had emotional problems. A psychiatrist who examined her but had never treated her testified that in his opinion, Mrs. Butler was intellectually aware of what she was doing although she might not have really comprehended the gravity of her actions at the time she confessed.
Mrs. Butler testified that during the time she was questioned she was afraid, not of physical violence but of not knowing what to expect. She said she was cold, hungry and tired. Evidently, she never made any complaint to the officers or her husband and father to this effect. She said that Officer Harpole, who was a friend of her family, was real nice and friendly, "just like we would meet on the street." She said that he did talk about how well he knew her family and how much he thought of her father. When asked whether Mr. Harpole gave her any assurances during his interrogation, she said:
He just said "Helen, I know that you know something and if you will tell us what you know, you will feel better." And he said "We will do all that we can to help you." And that was all that he said at that time, but when my father and my husband were starting to leave, he told the three of us, I think he was looking at my daddy at the time he said it, he said "if you will just tell her to tell us what she knows, you can take her home with you." That was just about his words.
On cross examination, she admitted that Sheriff Middleton read her rights to her from a card which he took from his billfold. She admitted that the signature on the waiver was her signature, but said she did not remember signing the waiver. She admitted that the written statement which she testified on direct examination was dictated by Officer Harpole was similar to the oral statement she had already give to Officer Harpole and that the statement was in her handwriting and signed by her. She admitted that no threats were made to induce her to give the statement.
On redirect examination, she said at the time she made the statement, she was more or less mentally exhausted, and she just fell apart and broke down and cried.
All officers who questioned Mrs. Butler testified on the motion to suppress, and it is clear from their testimony that the constitutional rights of Mrs. Butler were fully explained to her before she was ever questioned. It is also clear that no third degree methods were used in questioning her. She was not subjected to any gruelling questions. They all denied that any promises or assurances were made to induce Mrs. Butler to confess.
Officer Harpole testified that he was a friend of Mrs. Butler's family and had known Mrs. Butler all her life. He denied that he in any way used this friendship to induce Mrs. Butler to confess. He denied that he made her any promises or assurances. He admitted that he did tell her to tell the truth and if it implicated someone else, such person would have to be implicated. He testified that he did not drill Mrs. Butler and that she talked to him just like she had always talked to him. The only evidence he confronted her with was that the car seen near the scene of the shooting had one of its parking lights out and that he observed her car which her husband drove up in that night had one of the parking lights out. He also told her that the laboratory had reported that the bullets that came out of the victim's body came from the same type gun that belonged to her husband. It is not contended that the circumstances that Officer Harpole confronted Mrs. Butler with were not true nor is it contended that he was guilty of any deceit to induce her to confess. Officer Harpole denied that he dictated *677 the written statement that Mrs. Butler wrote out in her own handwriting, but admitted he did dictate the first paragraph which contains a statement relative to her rights being explained to her.
Appellant argues that the facts in this case bring it within the rule announced in Garrity v. New Jersey, 385 U.S. 493, 87 S.Ct. 616, 17 L.Ed.2d 562 (1967), holding that mental coercion may be as much or more of a factor as physical coercion; Spano v. New York, 360 U.S. 315, 79 S.Ct. 1202, 3 L.Ed.2d 1265 (1959), holding a confession involuntary where questioners worked in shifts, the accused had a history of mental instability, one of the interrogators was a friend of the accused and the relationship of confidence was used to elicit the confession; and Harvey v. State, 207 So.2d 108 (Miss. 1968) holding that an objection on the confession should have been sustained where the accused was mentally incapable of understanding the charges against him or the meaning of a waiver of his constitutional rights. An examination of the facts in the cases above cited reveals that the facts in the case before us are a far cry from the facts revealed in those cases, and they are not controlling here.
An important element in this case is that prior to the time Mrs. Butler confessed, she was alone with her father and husband for at least a few minutes during which she evidently made no complaint to them about being subjected to gruelling questions, nor did she make any complaint about being hungry, cold or tired. In fact, her husband testified that he did not notice it being cold in the room. The record is silent as to what advice, if any, they gave her. However, her husband did say that he did not advise her to tell the truth. It is also significant that her father was not called to testify in her behalf. In any event, about thirty minutes after seeing them, she confessed that she committed the crime. The truthfulness of her confession is evident by the fact that the purse of the decedent was found at the place where Mrs. Butler told Officer Harpole she had thrown it.
Appellant cites and relies upon among other cases Wong Sun v. United States, 371 U.S. 471, 83 S.Ct. 407, 9 L.Ed.2d 441 (1963). It is argued that the confession in this case is causally connected with the arrest and consequently it is tainted and inadmissible. Alternatively, it is argued that even if there were an intervening act of free will between the time of the arrest and the statement, the illegal arrest is still a factor to be considered along with the other circumstances in determining the voluntariness of the confession and that under the facts in this case the confession was involuntary. We are of the opinion that the facts in this case are clearly distinguished from the facts in Wong Sun, supra, as the statements made in Wong Sun were made almost immediately after the arrest as an impulsive response to the situation in which the arrestee immediately found himself. Here the statement was made some hours later and after appellant had conferred with her husband and father. It was recognized in Wong Sun that if the facts existed which would show an act of free will, the taint of unlawful arrest might be purged.
We are of the opinion that the illegal arrest is only a factor to be considered along with the other circumstances in determining whether the confession was voluntary. The trial judge heard the evidence, observed the witnesses, and found beyond a reasonable doubt that the confession was free and voluntary. After a careful review of the record, we are of the opinion that he was amply justified in so finding.
Appellant also argues that the trial court was in error in refusing to suppress the .22 caliber pistol and allowing it to be admitted into evidence. Appellant argues that because the gun belonged to her husband she had no right to surrender it and thereby waive her husband's constitutional rights. This argument is without merit. The fallacy in it is the fact that the husband's *678 constitutional rights are not at stake, only the rights of Mrs. Butler. True, if the gun seized were sought to be used against Mrs. Butler's husband, a valid objection on his behalf would lie since the wife had no power to waive the constitutional rights of the husband. However, there is no contest to the fact that Mrs. Butler voluntarily turned the gun over to the sheriff. Consequently, she waived her right to raise constitutional objections on her part to its introduction in evidence.
The only other error assigned that we deem necessary to notice is that the trial court was in error in refusing to admit the transcript of the hearing on the motion to suppress into evidence at the trial on the merits for the jury's consideration on the issue of the weight and credibility of the confession.
Counsel for the appellant argue that they relied upon our statement in Rhone v. State, 254 So.2d 750 (Miss. 1971), where we said that after the confession had been held by the Court to be competent evidence, either party has the right to introduce before the jury "the same evidence" which was submitted on the preliminary inquiry as well as other evidence relative to the weight and credibility of the confession. Appellant construes "the same evidence" to mean the transcript of the preliminary hearing. The transcript of the evidence taken on the preliminary inquiry was hearsay evidence and could only have been admitted upon the showing of the unavailability of the witness. Peeples v. State, 218 So.2d 436 (Miss. 1969). Furthermore, the greater portion of the testimony that defense counsel sought to introduce was available through witnesses who actually testified at the trial on the merits. Defense counsel simply chose not to inquire into this feature of the case through these witnesses.
The same evidence as used of course means the calling of the witnesses to introduce the same testimony that was given on the preliminary hearing.
After a careful consideration of the record in this case, we find no reversible error. Therefore, this case must be and is affirmed.
Affirmed.
RODGERS, P.J., and SMITH, ROBERTSON, and BROOM, JJ., concur.