330 So.2d 597 (1976)
Eddie JONES
v.
STATE of Mississippi.
No. 48972.
Supreme Court of Mississippi.
April 6, 1976.
*599 Alexander & Johnston, Cleveland, for appellant.
A.F. Summer, Atty. Gen., by John C. Ellis, Sp. Asst. Atty. Gen., Jackson, for appellee.
Before GILLESPIE, C.J., and ROBERTSON and LEE, JJ.
GILLESPIE, Chief Justice, for the Court:
Eddie Jones (defendant) was tried in the Circuit Court of Bolivar County for the murder of his wife, Mrs. Vernell Jones, and convicted of manslaughter. The court sentenced him to ten years in the penitentiary.
The facts are stated in the light most favorable to the state in view of the jury verdict of guilty.
Defendant went to bed on a Saturday night about 10 o'clock, leaving his wife up cooking. About 11 o'clock P.M., Mrs. Jones and her three small children walked a half mile to the home of her sister, Mrs. Ollie Mae Sanders. After arriving at her sister's home, Mrs. Jones ironed and put on a blue-green, long sleeve dress trimmed with white rick-rack. Mrs. Jones asked her sister to keep her children; she then told her that she, Mrs. Jones, and her husband (the defendant) had had a fight and that she was going to the Paradise Lounge. Mrs. Jones, who was not drinking at that time, left her sister's home about 11:30 P.M. She was next seen between 1:00 and 3:30 A.M. in the Town of Mound Bayou at a service station to which she had walked to get out of the rain. At that time she was wearing the blue dress and was not drunk. While she was at the station, one Henry Stokes arrived, and, upon Mrs. Jones' request, he took her home. When they arrived at her house, he blew his horn. Defendant came to the door, and Stokes said: "Hey, man, here your wife." Defendant said nothing. According to Stokes, Mrs. Jones, who did not appear to be drunk, got out of the car and walked to the house.
About 9:00 A.M. on Sunday morning, Defendant went to the home of his sister-in-law, Mrs. Sanders, picked up his children and took them home. Later that Sunday morning, a relative came by to take the Joneses to dinner, and the Defendant told the relative that Mrs. Jones had gone away. However, she had not gone away; at that time, she was lying on a bedroom floor where she remained until about noon on Monday. On Monday morning, Defendant went to work, but according to his statement, before he left he told one of the children to go and tell Mrs. Sanders if his wife did not get up at the usual time. Mrs. Jones did not get up, and the child went to the home of his aunt and told her he could not arouse his mother.
About noon on Monday, Mrs. Sanders went to the Joneses' home where she found her sister dressed in blue jeans and a yellow halter and lying on the bedroom floor with a pillow under her head. At that time, the blue dress with the white rick-rack trim was lying on the bed in the middle bedroom. A blue bra was found in the closet. Both had what appeared to be blood on them. The dress was placed in the closet. Mrs. Sanders tried but failed to arouse her sister, and then she took her to the hospital where she (Mrs. Jones) died of subdural hematoma secondary to trauma at 8:29 P.M. on that Monday night.
Medical evidence showed that one of Mrs. Jones' eyes was closed, that there were recently inflicted injuries to the head, and that the head injuries, of which she died, could have been caused by blows inflicted by either a blunt instrument or by a propelling of her body against the wall or floor. The injuries were more than would normally result from falling.
*600 The Defendant endeavored to show, and testified in support thereof, that his wife came home early Sunday morning in a drunken condition, that she was in a drunken condition when he went to bed about 10 P.M. on Saturday night, and that she had been drinking excessively for a considerable period of time. His defense was that she fell repeatedly after she got in the house and that he put a pillow under her head and changed her clothes because her dress was wet when she came home. Defendant admitted that his wife did not wake up after she came home early Sunday morning.
Several questions are raised on this appeal. The State concedes that the arrest of Defendant and the searches, hereinafter to be mentioned, were invalid. We find it unnecessary to state the circumstances attending the arrest and searches except to note that if the proof had been offered, it appears likely that the State could have shown probable cause for the arrest. It follows that the court erred in admitting the plat of the inside of Defendant's home which was made by the deputy sheriff. The pictures of the interior of the house were likewise inadmissible. It also follows that the court erred in admitting the quilt and sheet which contained what appeared to be bloodstains and which were removed from the house, without a search warrant, two days after Defendant's arrest.
We also hold that the statement given to the officers while Defendant was held after the illegal arrest was inadmissible. Brown v. Illinois, 422 U.S. 590, 95 S.Ct. 2254, 45 L.Ed.2d 416 (1975); Wong Sun v. United States, 371 U.S. 471, 83 S.Ct. 407, 9 L.Ed.2d 441 (1963). Brown is authority for the proposition that the giving of the Miranda warning in and of itself is not sufficient to guarantee that the statement obtained after the illegal arrest was not obtained by exploitation of the illegal detention. In Brown, the Court said:
In order for the causal chain, between the illegal arrest and the statements made subsequent thereto, to be broken, Wong Sun requires not merely that the statement meet the Fifth Amendment standard of voluntariness but that it be "sufficiently an act of free will to purge the primary taint." (Citations omitted) 422 U.S. at 602, 95 S.Ct. at 2261, 45 L.Ed. at 426.
No effort was made to comply with Brown.

Did the trial court err in refusing to admit certain medical records offered by the Defendant?
In an effort to prove that the deceased was a drug addict and died from causes other than subdural hematoma resulting from recent injuries, the Defendant offered medical records showing the treatment of Mrs. Jones over a period of years. Some of the records showed that she had taken tranquilizers and other drugs under a doctor's prescription. This was a matter for the sound discretion of the trial judge, and we cannot say he erred in refusing to admit these medical records.

Was it error to admit into evidence some partially burned items identified as part of the blue dress worn by Mrs. Jones and part of a bra not worn by her?
On the Sunday morning following Defendant's arrest, the officers found some partially burned items identified as parts of the rick-rack trim on the blue dress worn by Mrs. Jones and part of a bra which was not shown to have been worn by her. These items were located across a ditch some 65 feet away from Defendant's house. It was not shown that they were part of the premises occupied by Jones. We are of the opinion that under the authority of Campbell v. State, 278 So.2d 420 (Miss. 1973), and Dotson v. State, 260 So.2d 839 (Miss. 1972), there is no basis for holding that there was a violation of Defendant's Fourth Amendment rights in the *601 seizure of these items. They were in open view to the public, and were seen by Mrs. Sanders as well as the officers. The proof fails to show the materiality of the partially burned bra because there was no evidence that it was worn by the deceased at the time in question. Thus, on retrial the partially burned bra, along with any other items not shown to be material or relevant, will not be admissible into evidence. But, as already stated, the burned parts of the dress will be admissible.

Did the court err in refusing to give Defendant's requested instructions Nos. 15, 16 and 17?
Defendant erroneously argues that Instruction No. 17 was refused. The record shows that the requested instruction was given. All three of the instructions referred to concern circumstantial evidence and instruct the jury that the evidence must exclude every hypothesis but the one proposed to be proven. Since Instruction No. 17 was given, it was not error to refuse the other two.

Did the court err in permitting testimony concerning the blue bra which was found in a closet and which was observed by Mrs. Sanders when she went to her sister's home in response to the child's statement that his mother could not be awakened?
This assignment of error and one concerning a white bra are based on the same proposition: The bras and testimony concerning them are inadmissible because the state failed to permit Defendant's counsel to inspect them as required by a court order. Upon retrial we feel confident counsel will have had an opportunity to inspect the bras. Thus, no objection can be predicated on the aforesaid ground. However, we are of the opinion that the white bra is not admissible and the state need not allow an inspection of it as the evidence shows conclusively that Mrs. Jones wore a blue bra. The Defendant himself so testified. The blue bra will likewise be inadmissible because its seizure was violative of the Fourth Amendment. However, Mrs. Sanders and Janet Daniels may testify concerning it (the bra) because their knowledge of it was not acquired as a result of the unconstitutional invasion and seizure.
The final question is: Was the defendant entitled to a directed verdict on the ground that there was not sufficient evidence to make a jury issue as to his guilt?
In summary, the proof showed that Defendant's wife was brought home by some men sometime between 1:00 and 3:30 A.M. on Sunday. Defendant contends that she was drunk and fell into the doorway and thereafter fell several times. Defendant also contends that she was drunk before he went to bed the night before. The Defendant is contradicted in each of these contentions. The medical evidence justified a finding by the jury that the subdural hematoma, from which the deceased died, was the result of recent blows to the head and face. Defendant concealed from a cousin the fact that the deceased was in the house; he told the cousin that she had walked away. The blue dress, which was found by the deceased's sister on Monday at noon, thereafter disappeared, and parts of it were found partially burned near Defendant's home. The jury was justified in rejecting Defendant's theory that the bruises, about the face and head of the deceased, were caused by repeated falls after she came home on Sunday morning. There was proof that the deceased was not drunk when she arrived home, and Defendant's testimony  that she was drunk, was passed out or was sleeping  could reasonably have been rejected by the jury. His testimony that he did not seek medical service for the deceased because he thought she was sleeping off one of her "drunks" could have also been reasonably rejected by the jury as incredible. It will be recalled that when the Defendant went to work sometime after 5:00 A.M. on Monday the deceased was lying on the floor *602 and had been there, according to Defendant, since 4:00 A.M. Sunday.
We think this is a fairly strong circumstantial evidence case which presented a jury issue, and this is true even when considered without the aid of the evidence improperly admitted.
For the several errors herein stated, this case is reversed and remanded for a new trial.
REVERSED AND REMANDED.
PATTERSON and INZER, P. JJ., and SMITH, ROBERTSON, SUGG, WALKER, BROOM and LEE, JJ., concur.