427 So.2d 957 (1983)
Joe Lee HALL
v.
STATE of Mississippi.
No. 53976.
Supreme Court of Mississippi.
February 23, 1983.
Robert B. Prather, Columbus, for appellant.
Bill Allain, Atty. Gen. by Marvin L. White, Jr., Sp. Asst. Atty. Gen., Jackson, for appellee.
Before WALKER, P.J., and DAN M. LEE and ROBERTSON, JJ.
ROBERTSON, Justice, for the Court:

I.
On the afternoon or evening of September 5, 1981, the home of William E. Prout, Jr. in Columbus, Mississippi, was burglarized. On November 10, 1981, Joe Lee Hall, defendant below and appellant here, was formally charged with this burglary in an indictment returned by the Lowndes County Grand Jury. The indictment further charged that Hall was a recidivist within the meaning of Miss. Code Ann. § 99-19-81 (Supp. 1982). Hall entered a plea of not guilty to all charges.
On February 26, 1982, this case was called for trial in the Circuit Court of Lowndes County. That afternoon, after hearing all of the evidence and receiving the instructions of the court and the arguments of counsel, the jury found Hall guilty on the principal charge of burglary.
*958 Immediately thereafter, the Circuit Court conducted a non-jury hearing on the recidivism issue. Without contradiction, the evidence established that Joe Lee Hall had, prior to that date, been convicted of two separate felonies, both burglaries. Accordingly, under the authority of Section 99-19-81 the Circuit Court sentenced Hall to serve a term of ten years without eligibility for probation or parole.
From this conviction and sentence, Hall appeals. We affirm.

II.
Stating them as we ought in the light most favorable to the verdict, the facts are as follows: On four occasions prior to September 5, 1981, Joe Lee Hall had done yard work, gardening and house work in and around the home of William E. Prout, Jr. on Seventh Street North in Columbus, Mississippi. On these occasions the Prout home was accessible to Hall. He had performed his work well.
Several days in advance, Prout had engaged Hall to do gardening work on the morning of September 5, 1981. At approximately 10:30 that morning, Hall telephoned Prout to be sure that he was still supposed to come to work. Prout advised Hall that he and his family were leaving for the weekend and, accordingly, there would be no reason for Hall to come to work that day. Prout told Hall that he would be back in touch with him on Monday or Tuesday.
Prout and his family then left for a camping trip at Grenada Lake. When they returned at approximately 1:30 on the afternoon of September 7, 1981, they discovered that their home had been burglarized and that six guns belonging to Prout had been removed from his gun cabinet.
The obvious mode of entry into the house was through the back door. The plate glass window in the back door had been smashed. A double-bladed ax owned by Prout was found nearby. Prout had left the ax in his storage room up on the second floor deck. On a previous occasion Prout's wife had shown Hall how to open the door to the storage room without a key.
On the evening of September 5, 1981, Hall was arrested at the Unicorn Lounge in Columbus by Officer Bobby Grimes of the Columbus Police Department. He was charged at that time with public drunkenness and with unlawful display of a firearm. At the time of his arrest, Hall was found to be in possession of three firearms which were later unequivocally identified to be the property of Prout.
On the morning of September 8, 1981, after having been advised of his constitutional right against self-incrimination, Hall made a confession in the presence of two Columbus police officers. In this confession, Hall stated that on September 5, he called Prout and asked if Prout had some work for him. Prout said no because his family was going camping. That night after dark he walked to Prout's home and took an ax from the storage room and broke the glass from the back door. Hall specifically admitted that he entered the house and took "three long guns and one pistol." Hall stated that he then left and went to the Unicorn Lounge, the guns still in his possession. Shortly thereafter he was arrested.

III.

A.
On this appeal Hall's primary assignment of error is that the trial court erroneously admitted into evidence his confession. Hall was arrested on the evening of September 5, 1981. The evidence reflects that on the morning of September 8, 1981, at approximately 9:20 a.m. Hall was given the standard Miranda [Miranda v. Arizona, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966)] warnings and executed a written waiver of his rights, all in the presence of Officers Pete Bowen and John Thomas. Thereafter, Hall made his confession which was reduced to writing by Officer Bowen. Bowen testified that, before signing, Hall was allowed to read the statement, and further, that Bowen read it aloud to Hall. Hall then signed the statement which was witnessed by Officers Bowen and Thomas, both of *959 whom testified at trial. See Agee v. State, 185 So.2d 671, 673 (Miss. 1966).
Neither at trial nor on this appeal does Hall raise any question regarding the voluntariness of the confession. In testimony at trial on his own behalf, Hall admitted signing the confession. He denied any memory of the burglary, however, and said he "confessed" because he had been caught with Mr. Prout's guns. In his own words, Hall said, "They told me and I said I presumed that they was right because they caught me with the guns." Hall acknowledged only a vague memory of going to Mr. Prout's house that night and of having some guns.
At trial and on this appeal, Hall has argued that his arrest was illegal and that the alleged illegality of the arrest so tainted the confession as to render it inadmissible. Specifically, Hall charges that on the evening of September 5, 1981, no warrant had been issued for his arrest and that Officer Grimes had no probable cause to believe that Hall had committed a felony. Further, Hall charges that he had committed no misdemeanor in the presence of Officer Grimes and, accordingly, that Grimes had arrested him illegally.
We find it unnecessary to determine the legality vel non of the arrest, for in our view the correct approach to this issue suggests a different pattern of analysis. We will, therefore, assume, without deciding, that everything said by Hall on this appeal regarding the facts and circumstances of the arrest is correct.[1]

B.
Brown v. Illinois, 422 U.S. 590, 95 S.Ct. 2254, 45 L.Ed.2d 416 (1975) charts our course in this case. In Brown, the defendant had been arrested without probable cause and without a warrant in violation of rights secured to him under the Fourth and Fourteenth Amendments to the Constitution of the United States. Under the facts, the first statement was given within two hours of the arrest, although prior to each statement Miranda-sufficient warnings were given. The issue, of course, was whether the confessions were "the fruit of the poisonous tree", and, thus, inadmissible. See Wong Sun v. United States, 371 U.S. 471, 83 S.Ct. 407, 9 L.Ed.2d 441 (1963).
Brown rejects absolutism in both directions. On the one hand, the mere fact that an accused is given full advice regarding his rights, as required by Miranda, cannot in every case render the confession admissible. In the words of Brown,
[t]he Miranda warnings, alone and per se, cannot always make the act sufficiently a product of free will to break, for Fourth Amendment purposes, the causal connection between the illegality and confession. 422 U.S. at 603, 95 S.Ct. at 2261, 45 L.Ed.2d at 427. [Emphasis in original]
On the other hand, Brown rejected the "but for" rule. The mere fact that a defendant confesses while in custody following an illegal arrest does not per se render the confession inadmissible. Rather, Brown holds that
[t]he question whether a confession is the product of a free will under Wong Sun must be answered on the facts of each case. No single fact is dispositive. 422 U.S. at 603, 95 S.Ct. at 2261, 45 L.Ed.2d at 427.
Brown then goes on to set forth the factors that ought to be considered by the trial court when faced with such a situation. First, Brown recognizes that
[t]he Miranda warnings are an important factor to be sure, in determining whether the confession is obtained by exploitation of an illegal arrest. 422 U.S. at 603, 95 S.Ct. at 2261, 45 L.Ed.2d at 427.
Other Brown factors which ought to be considered are
(1) the temporal proximity of the arrest and the confession;
(2) the presence of intervening circumstances;

*960 (3) the purpose and flagrancy of the official misconduct, i.e., the making of the illegal arrest; and
(4) any other circumstances that seem relevant.
Id.
Brown has been reaffirmed in Dunaway v. New York, 442 U.S. 200, 216-219, 99 S.Ct. 2248, 2258-2260, 60 L.Ed.2d 824, 838-840 (1979), and Taylor v. Alabama, ___ U.S. ___, 102 S.Ct. 2664, 73 L.Ed.2d 314 (1982).
This Court has applied the Brown holding on at least two prior occasions. In Jones v. State, 330 So.2d 597 (Miss. 1976), there was a total lack of evidence to show a break in the causal chain linking the illegal arrest and the subsequent confession. The Court thus held the confession inadmissible. 330 So.2d at 600. Dycus v. State, 396 So.2d 23, 26-27 (Miss. 1981) is to like effect.[2]

C.
In considering questions such as this, the trial courts should, of course, conduct a hearing either before trial or, upon timely objection, during the course of trial, outside the presence of the jury. All facts and circumstances relevant to the issue should be considered. It goes without saying that the burden of showing admissibility rests upon the state. Brown v. Illinois, 422 U.S. at 604, 95 S.Ct. at 2262, 45 L.Ed.2d at 427. At the conclusion of the hearing, the trial judge should give the reasons underlying his ruling and, specifically make such findings of fact as are necessary to enable proper review of the matter should an appeal be taken.
In the case at bar, the court merely overruled Hall's objection to the admission of the confession, without making findings of fact or giving any other supporting rationale for his decision. The facts in the record, however, are sufficiently clear and uncontradicted on the critical points to allow this Court to pass fairly upon the matter.[3]
First, as indicated above, Hall raises no factual issue regarding the voluntariness of his confession. A review of the Miranda warnings given to Hall in writing coupled with the waiver of rights form executed by Hall established the fact of voluntariness. Admissibility is suggested.
Second, we note the lapse of time between Hall's arrest and the time of his confession. Hall was arrested late on Saturday evening, September 5, 1981. His confession was given the following Tuesday morning. Brown mandates a consideration of "the temporal proximity of the arrest and confession". 422 U.S. at 603, 95 S.Ct. at 2261, 45 L.Ed.2d at 427. In Brown, the confession held admissible was given within a few hours after the defendant's illegal arrest.[4] Here, as indicated, the facts are wholly different. In the 60-odd hours Hall had been in jail, he certainly had sufficient time to become acclimated to his surroundings.[5] *961 As a matter of common sense, the coercive impact of incarceration may dissipate with time. The uncontradicted facts here, scrutinized under Brown, militate in favor of admissibility.
Third, we consider the purpose and flagrancy of the official misconduct. As indicated above, the question of whether or not there was an illegal arrest is by no means free from doubt.[6] But taking the facts in the light most favorable to Hall,[7] we find as follows: On Saturday evening of September 5, 1981, Officer Grimes received an official radio communication that there was a man in the Unicorn Lounge displaying a firearm. When Grimes entered the premises, the proprietor pointed to Hall and said "That's the one. He's the one with the guns." Hall stood up and, despite Grimes' admonitions to the contrary, began advancing on Grimes. Grimes immediately seized control of Hall and placed him in handcuffs. Consistent with his own security, considering the information he had at the time, Grimes acted reasonably. Even if we assume that Grimes had no knowledge that Hall was intoxicated until after Grimes had placed him under arrest, and even if we assume as Hall argues here that this rendered the arrest unlawful, the "illegality" was hardly flagrant. Likewise, interrogating Hall about the burglary of the Prout home could not have been the purpose of the arrest, for at the time Prout hadn't even discovered, much less reported, the burglary. Careful consideration of this third factor  the purpose and flagrancy of the official misconduct  supports admissibility.
In summary, applying the standards of Brown to the facts of the case at bar, we conclude that Hall's objections to the admission of his confession into evidence are not well taken. On the facts, the confession was sufficiently an act of free will so that the primary taint of the illegal arrest, if, indeed, there was one, was effectively purged. Accordingly, the trial court correctly overruled Hall's objection and properly received the confession into evidence against him.

IV.
At trial Hall pleaded intoxication as his defense. Specifically he urged that, at the time and on the occasion in question, he was so intoxicated on drugs (prescription and otherwise) and alcohol that he could not form the specific intent to commit any crime. He testified without contradiction that he had been drinking that day and that he had smoked marijuana. Officer Grimes, of course, corroborated Hall's testimony that he was intoxicated. The evidence is uncontradicted that Hall's intoxication was wholly voluntary.
Against this factual backdrop, Hall requested that the jury be instructed that his intoxication on the occasion in question was a defense to the charge in the indictment. Hall specifically asked that the jury be instructed that
If you find that the defendant [Hall] was so drunk, intoxicated or under the influence of drugs at the time, he broke out the glass in the back door of the residence of Mr. Prout, reached in and unlocked the door, and took goods or merchandise therefrom, to the extent that he was unable to have the specific intent to do said acts, and that he could not distinguish right from wrong, then you cannot find the defendant guilty of burglary.
The trial court refused the instruction. Hall claims error.
Whatever the law may once have been in this state, it is well settled today that voluntary intoxication is not a legally cognizable defense available to persons charged with crimes requiring proof of specific intent. On the authority of McDaniel v. State, 356 So.2d 1151 (Miss. 1978); Harris *962 v. State, 386 So.2d 393, 396 (Miss. 1980); and Lee v. State, 403 So.2d 132, 134 (Miss. 1981), we hold that the trial judge was correct in his refusal to give the requested instruction.

V.
Following receipt of the jury verdict on the principal charge, the circuit court then conducted a non-jury hearing on the recidivism issue. Hall objected to this issue being determined by the court without a jury, but makes no point of the matter here. See Adams v. State, 410 So.2d 1332, 1334 (Miss. 1982). Suffice it to say that the evidence established without contradiction that
(1) On April 27, 1961, Hall was adjudged by the Circuit Court of Lowndes County, Mississippi, guilty of the crime of burglary and sentenced to serve a term of five years in the state penitentiary, and
(2) On May 16, 1980, Hall was adjudged by the Circuit Court of Lowndes County, Mississippi, guilty of the crime of burglary of an automobile and was sentenced to serve a term of three years in the state penitentiary.
The Mississippi Legislature has enacted that persons such as Hall, now finally convicted of the crime of burglary in the instant case, who shall have been convicted twice previously of separate felonies, and who shall have been sentenced to separate terms of one year or more in the penitentiary, shall be sentenced to the maximum term of imprisonment for the felony in question without eligibility for parole or probation. Section 99-19-81. The maximum sentence is, in effect, incorporated by reference into Section 99-19-81.
At trial, Hall objected to the court considering his 1961 conviction on grounds that he was 16 years old at the time and that it was too remote to be of any relevance in the case at bar. On its face, the point is not without merit. It would be difficult as an original proposition to justify reliance upon a 21-year old conviction, arising out of an offense committed at a time when the defendant was only 16 years of age.[8]
In Pace v. State, 407 So.2d 530 (Miss. 1982), this Court was confronted with "convictions more than ten years old" and very appropriately "recognize[d] that the time lapse between a present offense and prior convictions could be a relevant consideration." 407 So.2d at 535. All the more so in the case at bar. Yet, Pace goes on to note the universally recognized rule that, subject only to constitutional limitations, the legislature is vested with the power and prerogative to fix punishments for crimes. 407 So.2d at 535.
For reasons best known to it, the legislature has placed no time or remotness limitations in Section 99-19-81, the recidivism statute. It would be inappropriate for this Court to do so now. In this case it is open to us to doubt only the legislature's wisdom, not its authority.
Under the circumstances, the Circuit Court correctly sentenced Hall to a term of ten years without eligibility for probation or parole, and its judgment to that effect is affirmed.
AFFIRMED.
PATTERSON, C.J., WALKER and BROOM, P.J., and ROY NOBLE LEE, BOWLING, HAWKINS and DAN M. LEE, JJ., concur.
PRATHER, J., takes no part.
NOTES
[1] So that there will be no misunderstanding about the point, we emphasize that we are not holding that on these facts the arrest of Hall was illegal. Suffice it to say that we do not consider Hall's argument on this point nearly as convincing as he does.
[2] In a long series of cases, this Court has suggested that, if an accused is properly advised of his constitutional rights, and if he freely and voluntarily admits to his participation in a crime, such an admission may be received into evidence against him at trial, regardless of the illegality of his initial detention. Keith v. State, 197 So.2d 480, 484 (Miss. 1967); Bell v. State, 274 So.2d 371, 373-374, (Miss. 1973); Evans v. State, 275 So.2d 83, 85, (Miss. 1973); Nabors v. State, 293 So.2d 336, 338, (Miss. 1974); Butler v. State, 296 So.2d 673, 675, (Miss. 1974); Harrison v. State, 307 So.2d 557, 561, (Miss. 1975). Varying verbiage has been employed, but the effect of the rule announced in our cases is arguably improper under Brown and Dunaway. Suffice it to say that our pre-Brown decisions should be viewed with caution.
[3] We emphasize that we are not here making findings of fact on conflicting evidence. Appellate courts do not do this. In the discussion that follows, we rely upon the uncontested fact of the voluntariness (as distinguished from truthfulness) of the confession and the uncontradicted facts on the "temporal proximity" and "purpose" issues. On the "flagrancy" issue we consider the facts in the light most favorable to Hall.
[4] In Dunaway the first confession was given within an hour after the accused reached the police station. A second, more complete statement was made the following day. Dunaway v. New York, 442 U.S. at 203 fn. 2, 99 S.Ct. at 2252 fn. 2, 60 L.Ed.2d at 830. In Dycus the confession erroneously admitted into evidence was likewise given within a few hours of the arrest. Dycus v. State, 396 So.2d at 27.
[5] As discussed in Section V of this opinion, Hall was no stranger to the jailhouse environment. He further admitted at trial that he had been arrested for public drunkenness "maybe a hundred" times.
[6] See footnote 1, supra, together with accompanying primary test.
[7] See footnote 3, supra.
[8] At trial Hall admitted before the jury that he had been convicted of burglary in the State of Florida for which he received a six year sentence. Our recidivism statute, Section 99-19-81, allows consideration of prior felony convictions and prison terms "whether in this state or elsewhere". Hall's Florida burglary conviction could have been presented at the sentencing hearing but was not. In affirming Hall's sentence, we do not rely in any way on Hall's Florida burglary conviction.