486 So.2d 1209 (1986)
J.W. HENRY
v.
STATE of Mississippi.
No. 54719.
Supreme Court of Mississippi.
February 5, 1986.
Rehearing Denied May 7, 1986.
James G. Tucker III, Cook, Tucker & Sharp, Bay St. Louis, for appellant.
Bill Allain, Atty. Gen. by Henry C. Clay, III, Sp. Asst. Atty. Gen., Edwin Lloyd Pittman, Atty. Gen. by Gail Lowery, Sp. Asst. Atty. Gen., Jackson, for appellee.
En Banc.
DAN M. LEE, Justice, for the Court:
This appeal arises out of a burglary conviction in Hancock County for which J.W. Henry was sentenced to five years imprisonment. On appeal, Henry asserts that the trial court lacked jurisdiction, and that an inculpatory statement he made should not have been admitted into evidence. Finding no reversible error, we affirm.
Beyond the substantial legal issues tendered, the prolongation of the processing and adjudication of this appeal is a matter of great concern. In the six years that have come and gone since he was convicted on this burglary, J.W. Henry has completed *1210 the service of his sentence. Although we here affirm, such laxity and delay is most disturbing.
On the afternoon of November 2, 1978, a two-door, hardtop, cream and gold Pontiac drove up to the rear of the home of Richard E. Grayson in Waveland, Mississippi. The car contained three or four young black men. Some of the young men exited the vehicle. Two stood around outside while one apparently entered the house. Moments later, Will Hines, a neighbor, approached the Grayson home and asked one of the two young men outside the house what they were doing. This conversation  and his observation of Grayson's stereo set outside the house  caused Hines to suspect that the Grayson home was being burglarized. He returned to his home and called the police.
In response to Hines's call, the police arrived and, with Hines's assistance, determined that the Grayson home had been burglarized. Hines furnished a description of the vehicle used during the commission of the burglary. In due course, the police located a vehicle matching that description and photographed it. Hines was shown this photograph and two or three photographs of other cars. He identified the photograph of the vehicle the police had located. The police determined that the vehicle belonged to Joseph Henry, a separate person having no relation to J.W. Henry except the coincidence of their last names.
Hines also told the police that the black youth with whom he had spoken was named Pookie Mercer. Mercer was arrested but denied knowing anything about the burglary. J.W. Henry was subsequently arrested pursuant to an arrest warrant about which more will be said later. The evidence that initially caused the police to suspect J.W. Henry does not appear in the record.
Henry was arrested at 4:55 p.m. on November 6, 1978. He was taken to the police station, advised of his Miranda rights, and presented with a "Waiver of Rights" form which he signed at 5:03 p.m. By 5:35 p.m., Henry had confessed to the burglary. A police officer transcribed Henry's confession, but Henry refused to sign the written statement.
The record reflects that on November 9, 1978, proceedings in this case were begun against J.W. Henry in youth court of Hancock County. The prosecutor's office was apparently of the impression that Henry was, at that time, only 17 years old. Upon discovering this error, the youth court entered an order of dismissal without prejudice.
The Grand Jury of Hancock County, on January 10, 1979, returned an indictment charging J.W. Henry and two others with the burglary of the Grayson home. Henry moved to quash the indictment and remand the case to youth court. That request was denied.
The case was called for trial in the Circuit Court of Hancock County on April 10, 1979. At trial, two police officers who had been present during the waiver of rights and interrogation of J.W. Henry stated that no coercion was used to affect the waiver, nor was Henry under any duress at that time. The police officers' recounting of the oral confession made by J.W. Henry was the primary evidence offered at trial which connected Henry to this burglary.
After hearing and considering all of the evidence, the jury returned a verdict of guilty of burglary of a dwelling, Miss. Code Ann. § 97-17-19 (1972). Henry was sentenced to a term of five years in the custody of the Mississippi Department of Corrections.
At the outset, Henry challenges the authority of the circuit court to hear and adjudge the charge against him. Instead, he argues, jurisdiction lay in the youth court.
In support, Henry urges: (1) the only evidence in the record regarding his age at the time of the crime in the record is in the form of affidavits showing him to be 17 years old; and (2) even if he was 18, a December 10, 1975, order of the youth court of Hancock County (adjudicating him *1211 a delinquent and retaining jurisdiction for dispositional purposes) had the effect of vesting in the youth court jurisdiction over all of Henry's subsequent misadventures until he should reach the age of 20 years, supposedly as provided in the old youth court act, Miss. Code Ann. § 43-21-9 (1972).
Henry's first basis for his youth court jurisdiction theory  an absence of proof that he was 18 years old at the time of the crime  dissolves rather quickly in the face of his birth certificate which establishes Henry's date of birth as October 9, 1960.[1] The instant burglary occurred on November 2, 1978. Enough said.
Henry's second point begins with an order entered by the youth court of Hancock County on December 10, 1975. By virtue of that order, Henry was adjudged a delinquent and was placed on supervised probation. The order expressly provided that the Youth "Court retains jurisdiction of said child as authorized ... [by law]."
For a determination of what jurisdiction was authorized by law, we review the statutes.
The Youth Court Act, in effect at the time, provided in Miss. Code Ann. § 43-21-9 (1972):
Where jurisdiction shall have been obtained by the Court in the case of a child, jurisdiction of such person as well as of any offenses by him committed may be retained or resumed by the Court until he becomes twenty years of age... .
No doubt this statute conferred upon the youth court authority to act with respect to Henry's 1975 delinquency through and including his twentieth birthday. In Re Green, 203 So.2d 470, 472 (Miss. 1967). In no way, however, does it operate to deprive the circuit court of jurisdiction to try new offenses committed beyond a juvenile offender's eighteenth birthday, though the youth court retains jurisdiction for dispositional purposes (including probation revocation or modification) of all matters arising out of the prior juvenile offense.
The point has been made express in an amendment to the youth court jurisdiction statute effective July 1, 1979. Miss. Code Ann. § 43-21-151(2) provides:
The youth court shall not have jurisdiction over offenses committed by a child on or after his eighteenth birthday.
The new statute only makes clear what was apparent from a common sense reading of the jurisdictional statute in effect at the time of the offense in issue.
Having due regard for all of the facts and circumstances of this case, we hold that the Circuit Court of Hancock County had full authority to hear and adjudicate all matters pertaining to and arising out of the indictment filed January 10, 1979, and charging J.W. Henry with the offense of burglary of the home of Richard E. Grayson. The circuit court committed no error when it overruled Henry's "Motion to Quash Indictment and Remand Case to Youth Court."
Henry's second assignment of error concerns the admissibility of his confession made shortly after his arrest. Henry claims that his arrest was illegal; that the inculpatory statement he gave less than 40 minutes later was a product of that arrest; and, therefore, that the statement was inadmissible. Henry invokes the doctrine announced by the Supreme Court of the United States in Brown v. Illinois, 422 U.S. 590, 95 S.Ct. 2254, 45 L.Ed.2d 416 (1975) and fully accepted in this state in Hall v. State, 427 So.2d 957, 959-961 (Miss. 1983). *1212 Applying the test as set forth in Brown we must affirm.
Before the admissibility of J.W. Henry's inculpatory statement can be considered, the circumstances surrounding his arrest must be analyzed. Henry was arrested by Officer Robert Tartavoulle pursuant to a warrant issued by an ex officio justice of the peace. The warrant was based on the affidavit of Officer Sandra Henley, who, with her partner, Tartavoulle, had been summoned to the scene of the crime. The affidavit read:
Before me Lucien M. Gex, Jr., an ex-officio Justice of the Peace of the said County, Sandra F. Henley makes oath that J.W. Henry on or about the 2nd day of November, 1978, in City of Waveland of said County, did unlawfully, willfully and feloniously break and enter the dwelling house of Richard E. Grayson, 712 South Beach Blvd., Waveland, Mississippi with the felonious intent to take, steal and carry away certain personal property located therein of the property of Richard E. Grayson, being in violation of Section 97-17-19, Miss.Code 1972 annotated, and being against the peace and dignity of the State of Mississippi.
It may be that this affidavit was technically deficient. To effect an arrest for a felony, either with or without a warrant, a police officer must have (1) reasonable cause to believe a felony has been committed; and, (2) reasonable cause to believe that the person proposed to be arrested is the one who committed it. Caldwell v. State, 443 So.2d 806, 811 (Miss. 1983), citing Powe v. State, 235 So.2d 920 (Miss. 1970) (warrantless arrest); Rule 1.01, Uniform Criminal Rules of Circuit Court Practice (arrest with warrant). "Probable cause" means less than evidence which would justify condemnation, but more than bare suspicion. Hester v. State, 463 So.2d 1087 (Miss. 1985), citing Powe, supra. Here, there is no indication that Officer Henley made her affidavit on anything more than bare suspicion.
This Court has, on occasion, allowed so-called "barebones" affidavits similar to the one here in issue. For example, in Henley v. State, 228 So.2d 602 (Miss. 1969), an affidavit which "gave as the `underlying facts and circumstances' that Cooper Road Drug Store had been burglarized on September 30, 1978, and certain bank checks had been stolen and that an informant who had previously furnished reliable information, stated that some of these checks were in the apartment of Henley." Id. at 603. (emphasis added).
It is apparent that the affidavit in the instant case provides even less information than the one in Henley. Here there is absolutely no indication in the affidavit (nor anywhere else in the record) how the officers came to suspect J.W. Henry's involvement in the burglary. The irony is that, had the officers proceeded without benefit of an arrest warrant, it is almost certain that they would have been called upon at trial to testify regarding the probable cause for arrest. It is unfortunate that the arresting officers' good faith, as indicated by their effort to secure an arrest warrant, might ultimately have been instrumental in frustrating their efforts to secure a valid arrest.
Assuming but not deciding that Henry's arrest was illegal, a question remains. Was his subsequent confession thereby rendered inadmissible? We find that it was not.
In Hall v. State, 427 So.2d 957 (Miss. 1983), this Court sets forth the criteria for determining whether a confession, obtained subsequent to an illegal arrest, is admissible. We quote at length:

Brown v. Illinois, 422 U.S. 590, 95 S.Ct. 2254, 45 L.Ed.2d 416 (1975) charts our course in this case. In Brown the defendant had been arrested without probable cause and without a warrant in violation of rights secured to him under the Fourth and Fourteenth Amendments to the Constitution of the United States. Under the facts, the first statement was given within two hours of the arrest, although prior to each statement Miranda-sufficient warnings were given. The issue, of course, was whether the *1213 confessions were "the fruit of the poisonous tree," and, thus, inadmissible. See Wong Sun v. United States, 371 U.S. 471, 83 S.Ct. 407, 9 L.Ed.2d 441 (1968).

Brown rejects absolutism in both directions. On the one hand, the mere fact that an accused is given full advice regarding his rights, as required by Miranda, cannot in every case render the confession admissible. In the words of Brown,

[t]he Miranda warnings, alone and per se, cannot always make the act sufficiently a product of free will to break, for Fourth Amendment purposes, the causal connection between the illegality and confession. 422 U.S. at 608, 95 S.Ct. at 2261, 45 L.Ed.2d at 427. (Emphasis in original)
On the other hand, Brown rejected the "but for" rule. The mere fact that a defendant confesses while in custody following an illegal arrest does not per se render the confession inadmissible. Rather, Brown, holds that
[t]he question whether a confession is the product of a free will under Wong Sun must be answered on the facts of each case. No single fact is dispositive. 422 U.S. at 603, 95 S.Ct. at 2261, 45 L.Ed.2d at 427.

Brown then goes on to set forth the facts that ought to be considered by the trial court when faced with such a situation. First, Brown recognizes that
[t]he Miranda warnings are an important factor to be sure, in determining whether the confession is obtained by exploitation of an illegal arrest. 422 U.S. at 603, 95 S.Ct., at 2261, 45 L.Ed.2d at 427.
Other Brown factors which ought to be considered are
(1) the temporal proximity of the arrest and the confession;
(2) the presence of intervening circumstances;
(3) the purpose and flagrancy of the official misconduct, i.e., the making of the illegal arrest; and
(4) any other circumstances that seem relevant.
427 So.2d at 959-960.
The weight to be given each of these factors will necessarily vary with the circumstances of each case. However, the State bears the burden of proof for each factor as well as the burden of persuasion that the factors suggesting admissibility outweigh those suggesting inadmissibility. See Penick v. State, 440 So.2d at 554; Hall v. State, 427 So.2d at 960.
Considering the Brown factors, we first note that the temporal proximity of the arrest and the confession was great. J.W. Henry was arrested at 4:55 p.m. His interrogation was concluded at 5:35 p.m. The confession following so shortly after the arrest suggests inadmissibility. Dunaway v. New York, 442 U.S. 200, 216-219, 99 S.Ct. 2248, 2258-2260, 60 L.Ed.2d 824, 838-840 (1979); Patterson v. State, 413 So.2d 1036, 1039 (Miss. 1982); Dycus v. State, 396 So.2d 23, 26-27 (Miss. 1981).
Second, we note the presence of intervening circumstances. Eight minutes following his arrest, J.W. Henry was presented by Officer Tartavoulle with a standard Miranda Warning and Waiver of Rights Form. J.W. Henry signed the form some thirty-two minutes later. The circuit court held that the warnings were properly given and that the waiver was executed without threats or coercion. This is a factor suggesting admissibility. (See, however, Dycus v. State, 396 So.2d 23, 26-27 (Miss. 1981) where more substantial intervening circumstances were held insufficient to purge a confession of the taint of an illegal arrest where there was flagrant misconduct.)
Third, we find absolutely no flagrancy in the official misconduct, i.e., the making of the illegal arrest. The possibility that the arrest was illegal is itself insufficient to militate against the admissibility of a subsequent confession. Indeed, the very existence of the four point test as set forth in Brown v. Illinois, 422 U.S. 590, 95 S.Ct. 2254, 45 L.Ed.2d 416 (1975) and adopted in Hall, 427 So.2d at 959-60, presupposes the *1214 illegality of the arrest. The question is whether there was purposeful or flagrant misconduct on the part of the police. In the instant case there is no indication of such misconduct.
Any technical deficiency of her affidavit notwithstanding, the very fact that Officer Henley and her partner, Officer Robert Tartavoulle, made an effort to procure an arrest warrant prior to apprehending J.W. Henry is indicative of their good faith and desire to comply with the law. This is consistent with and suggestive of the admissibility of the subsequent confession. The case of Dycus v. State, 396 So.2d 23 (Miss. 1981) has been referred as substantially analogous on its facts to the case at bar. Such a comparison is particularly inappropriate as it relates to this element of official misconduct. It is, however, informative by way of contrast.
In Dycus, the defendant testified that officers took him to the funeral home to view the bodies of his supposed victims; that "his head was pushed by the officers against the genital area of Martha (his [deceased] sister-in-law);" and "that the officers threatened to make him stay there and watch tests (autopsy, etc.) to be performed upon the bodies of the two dead females until he confessed, all of which he says made him sick and coerced him into giving the statement." Id. at 26. This is hardly analogous on its facts to the case at bar.
By way of analysis of the fourth factor, i.e., any other circumstances that seem relevant, J.W. Henry's age may be considered  he was eighteen years of age at the time of his arrest. This is a fact which when present may suggest inadmissibility. However, this is not a case involving a juvenile defendant, a minor in need of the special protection of the law. See, Ford v. State, 75 Miss. 101, 21 So. 524 (1897). To the contrary, in a case similar to the one under consideration, this Court held the confession of a seventeen year old, made less than an hour after his allegedly illegal arrest, to be voluntary and admissible. McLeod v. State, 229 So.2d 557 (Miss. 1969). While the youth of one arrested may make him more susceptible to the coercive effects of official misconduct, such a factor is of little moment in the total absence of flagrant wrongdoing.
The only Brown factor which would indicate inadmissibility is the first, the temporal proximity between the arrest and the confession. We are convinced that even this factor is less than compelling. The Court stated in Hall that, "[a]s a matter of common sense, the coercive impact of incarceration may dissipate with time." 427 So.2d at 961. Just as self-evident is the coercive effect of prolonged incarceration. In short, the "temporal proximity factor" is a two-edged sword to be employed only with caution.
Whether a confession obtained after a technically deficient arrest is admissible should primarily turn on the presence and degree of any police misconduct involved. Finding no such misconduct in the instant case, we are of the opinion that the decision of the trial court should be affirmed.
There is a matter that remains to be addressed  a matter profoundly more disturbing than the errors alleged above. We refer to the inexcusable delay in the processing of this appeal.
The final judgment of the Circuit Court of Hancock County was entered April 10, 1979. More than four years later  on April 28, 1983, the record in this case, some 121 pages in length, was filed with the Clerk of this Court. More than two additional years have been consumed here in the briefing, arguing and decision of the case. During that time, J.W. Henry has completed the service of his sentence.
The blame for this outrage must be shared. The court reporter must bear a majority of the responsibility. There is no conceivable reason why a court reporter should take three years to prepare a 121 page transcript. No excuse, reasonable or otherwise, is suggested in the record.
Nothing in the record indicates how  or whether  the court reporter obtained extensions of time from April 18, 1979, through January 29, 1982, for the preparation *1215 and filing of the trial transcript. A court reporter normally has sixty days from receipt of notice of appeal (and, in cases such as this, notice that the appellant was proceeding in forma pauperis) within which to prepare and file the transcript. Miss. Code Ann. § 9-13-37 (1972). Only this Court has authority to grant a further enlargement of time. Rule 44, Miss.Sup. Ct.Rules. The record reflects no authorized order entered by this Court granting any such enlargement of time.
Almost another year elapsed before, on March 22, 1983, the circuit clerk completed the record. An additional month elapsed before the record was formally filed and this case docketed with the Clerk of this Court.
Counsel for J.W. Henry was also derelict. Although the appeal was perfected on April 18, 1979, insofar as the record reflects, counsel proceeded to do nothing for the next 33 months. When no transcript had been filed by the expiration of that time, counsel, on January 29, 1982, finally moved the circuit court to require the court reporter to complete and file the transcript.
We say all of this in the hope that those responsible for this delay and those having authority to thwart such in the future will wake up and do something.
AFFIRMED.
PATTERSON, C.J., WALKER and ROY NOBLE LEE, P.JJ., and HAWKINS and ANDERSON, JJ., concur.
HAWKINS and DAN M. LEE, JJ., specially concur.
ROBERTSON, PRATHER and SULLIVAN, JJ., dissent.
HAWKINS, Justice, specially concurring:
I concur.
There is a vast difference between evidence procured as a result of a technically deficient search warrant affidavit and a confession following a technically deficient arrest affidavit.
In the first instance, the harm to the accused comes as a result of the search. There is no intervening factor. In the second, no incriminating evidence results from the arrest, but rather from the voluntary decision of the accused to admit his criminal conduct. The second instance involves, indeed requires, the free and voluntary choice of a rational individual before the state is given any competent evidence in a criminal proceedings. The first does not.
In the first instance, if the search met the technical requirements, the evidence is admissible, directly and absolutely. If not, the evidence is inadmissible.
On the other hand, a perfectly valid arrest, followed by a confession which was not voluntary, still renders the confession incompetent as evidence. There are many additional safeguards granted an accused, including the Miranda warning, before any confession he made is competent evidence.
Appellate judges who ignore this basic difference wind up making silly statements.
Let us suppose an officer with a defective search warrant, or indeed no search warrant at all, goes to a house, and asks the owner if he may search the house. The owner consents.
Is the search invalid? Of course not. Why? Because there was the intervention of a free and voluntary choice. The focus of the court would be whether the owner freely and voluntarily consented to the search and knowingly waived his constitutional right, not the authority of the officer to make the search without the consent.
By the same token, the focus of a court in a confession should be: was it in truth and in fact a free and voluntary decision?
Anyone who reads Brown v. Illinois, 422 U.S. 590, 45 L.Ed.2d 416, 95 S.Ct. 2254 (U.S. 1975), and Wong Sun v. United States, 371 U.S. 471, 83 S.Ct. 407, 9 L.Ed.2d. 441 (1963), cannot be unaware that an arrest without probable cause requires an examination by the circuit judge to determine if this 4th Amendment violation vitiates even a free and voluntary confession. We are required to go the distance *1216 of these decisions, but no further. In Brown the Court stated:
... The question whether a confession is the product of a free will under Wong Sun must be answered on the facts of each case. No single fact is dispositive. The workings of the human mind are too complex, and the possibilities of misconduct too diverse, to permit protection of the Fourth Amendment to turn on such a talismanic test. The Miranda warnings are an important factor, to be sure, in determining whether the confession is obtained by exploitation of an illegal arrest. But they are not the only factor to be considered. The temporal proximity of the arrest and the confession, the presence of intervening circumstances, see Johnson v. Louisiana, 406 U.S. 356, 365, 32 L.Ed.2d 152, 92 S.Ct. 1620 [at 1626] (1972), and, particularly, the purpose and flagrancy of the official misconduct are all relevant. See Wong Sun v. United States, 371 U.S., at 491, 9 L.Ed.2d 441, 83 S.Ct. 407 [at 419]. The voluntariness of the statement is a threshold requirement. Cf. 18 U.S.C. § 3501 [18 U.S.C.S. § 3501]. And the burden of the showing admissibility rests, of course, on the prosecution.
In that case the Court also noted, p. 428: "The illegality here, moreover, had a quality of purposefulness. The impropriety of the arrest was obvious; ..."
The circuit judge has a duty to weigh the various factors in Brown. Yet, as Justice D. Lee has observed, where, as in this case there was no official misconduct involved  indeed the warrant was issued by a neutral magistrate upon affidavit  it is quite important to bear in mind that it was not the 4th Amendment violation which brought about the confession, but Henry's free and voluntary act.
WALKER, P.J., and DAN M. LEE, J., join this opinion.
ROBERTSON, Justice, dissenting:

I.
In this case an obviously guilty defendant seeks reversal of his burglary conviction on grounds that his oral confession made shortly after his arrest was erroneously admitted in evidence against him. There is much in the majority opinion with which I agree. Where we disagree, I do not regard as wide the gaps that separate us. I concur with what has been said on the first four and a half pages, through the 21st line on page five, and on the last two pages of the majority opinion.
I write separately for two reasons. First, the majority opinion may be read as sending out erroneous signals regarding the manner in which probable cause is defined and handled in cases of alleged illegal arrest. Second, the majority in my view has incorrectly applied the rule of Brown v. Illinois, 422 U.S. 590, 95 S.Ct. 2254, 45 L.Ed.2d 416 (1975) and cut corners legally protected from the slice of our judicial scissors.

II.

A.
Taking the points in the order in which they appear in the majority opinion, I begin with Henry's claim that his arrest was illegal. The majority comes within an inch of conceding the point: "It may be that this affidavit was technically deficient"; "It is apparent that the affidavit in the instance case provides even less information than the ... [`barebones' affidavit] in [the only case cited that even remotely supports the State's view that the instant affidavit passes muster]"; and finally "Assuming but not deciding that Henry's arrest was illegal... ."
I suggest respectfully that the only view which the law allows us to take of this record is that Henry's arrest was illegal  for the reasons explained below. My greater concern is that someone reading the majority opinion might conclude the definition of probable cause and the strictures by which it is established are somehow lesser in arrest cases than in search cases. To be sure, the majority opinion does not say this. Still its approach to *1217 probable cause in this case is sufficiently fuzzy to make appropriate an explanation of the fact that probable cause carries the same meaning whether the object to be seized is a person or his property.
Henry was arrested by Officer Robert Tartavoulle pursuant to the supposed authority of a warrant issued December 6, 1978. The warrant, however, confers no authority except it be issued in conformity with the requirements of law. Here I refer particularly to the strictures of the Fourth and Fourteenth Amendments to the Constitution of the United States and to Article 3, Section 23 of the Mississippi Constitution of 1890 to the effect that no warrant for the seizure of any person may lawfully issue except upon probable cause.
The affidavit in question is a "barebones" affidavit containing only conclusory statements by a law enforcement officer. It reads as follows:
Before me Lucien M. Gex Jr. an ex-officio Justice of the Peace of the said County, Sandra F. Henley makes oath that J.W. Henry on or about the 2nd day of November 1978, in City of Waveland of said County, did unlawfully, wilfully and feloniously break and enter the dwelling house of Richard E. Grayson, 712 South Beach Blvd., Waveland, Mississippi with the felonious intent to take, steal and carry away certain personal property located therein of the property of Richard E. Grayson, being in violation of Section 97-17-19, Miss.Code 1972 annotated, and being against the peace and dignity of the State of Mississippi.[1]
No underlying facts or circumstances are recited in the affidavit, nor is the source of any facts or circumstances indicated, nor is any information given regarding the reliability of any such source. In short, nothing either in the affidavit or elsewhere, furnishes a clue as to how or why Officer Henley came to point the finger at J.W. Henry.
In search and seizure cases, we have accepted the new "totality of the circumstances" analysis for determining whether legally sufficient probable cause exists to confer authority upon a magistrate or judge to issue a warrant, whether the question arises under our state or the federal constitution. See Stringer v. State, 485 So.2d 274, ___ (Miss. 1985) (citing with approval the standard of Illinois v. Gates, 462 U.S. 213, 103 S.Ct. 2317, 76 L.Ed.2d 527 (1983), as followed in Lee v. State, 435 So.2d 674, 676 (Miss. 1983); McCommon v. State, 467 So.2d 940, 941 (Miss. 1985); and Breckenridge v. State, 472 So.2d 373, 376-77 (Miss. No. 55,534, 1985).
The concept of probable cause logically should and legally does carry a single meaning whether the seizure of a person or a thing be the issue at bar.
... the State argues that a reviewing court should employ less stringent standards for reviewing a police officer's assessment of probable cause as a prelude to a warrantless arrest than the court would employ in reviewing a magistrate's assessment as a prelude to issuing an arrest or search warrant. That proposition has been consistently rejected by this Court. United States v. Ventresca, 380 U.S. 102, at 105-109, 85 S.Ct. 741, [744-46] 13 L.Ed.2d 684, 686-89 (1965); Aguilar v. Texas, 378 U.S. 108[,] 110-111, 84 S.Ct. 1509, [1511-12] 12 L.Ed.2d 725, 726 (1964); Jones v. United States, 362 U.S. 270-71, 80 S.Ct. 725, [735-36] 4 L.Ed.2d 707, 708 (1959), 78 ALR2d 233.
 Whiteley v. Warden of Wyoming Penitentiary, 401 U.S. 560, 566, 91 S.Ct. 1031, 1035-36, 28 L.Ed.2d 306, 312 (1971) (emphasis added); see also See Illinois v. Gates, 462 U.S. 213, 235, 103 S.Ct. 2317, *1218 2330, 76 L.Ed.2d 527, 546 (1983) (same "probable cause" applies to both "search and arrest" warrants); Shadwick v. City of Tampa, 407 U.S. 345, 350, 92 S.Ct. 2119, 2122, 32 L.Ed.2d 783, 788 (1972) (same); compare Neves v. State, 268 So.2d 890, 894 (Miss. 1972) (a search warrant case relying upon definition of "probable cause" from the arrest warrant analysis of Strode v. State, 231 So.2d 779, 782 (Miss. 1970)) with Brown v. State, 394 So.2d 316, 318 (Miss. 1981) (an arrest warrant case defining "probable cause" by reference to Neves and Strode).
The point is simply put: if law enforcement authorities must have "probable cause" before they may lawfully enter my home and take my chair, they must have like "cause" before they may enter and take me out of my chair. Probable cause may have differing meanings by reference to the place, e.g., a home, an automobile, etc., from which the seizure is made. There is no respectable authority for attaching meanings that differ by reference to whether the thing to be seized is the person or his property. Indeed, intuition would lead one to think that, if the standards the state must meet be stricter in one case than the other, the stricter standards should apply in the case of seizure of the person, not merely his property.
The necessity, that a magistrate be informed of underlying facts and circumstances sufficient to support a finding of probable cause (under the totality-of-the-circumstances standard), when a search warrant is sought is succinctly reiterated in Rule 1.01 of our Uniform Criminal Rules of Circuit Court Practice governing "Arrest With Warrant":

If it appears from the facts set forth separately in writing in or with the complaint and any supporting affidavits or supplemental sworn testimony, that there is probable cause to believe that an offense has been committed and that the defendant committed it, a warrant for the arrest of the defendant shall be issued to any person authorized by law to execute it.
Paraphrasing the Gates-Lee-Stringer test, the task of the issuing magistrate in these cases is to make a practical, common sense decision whether, given all the facts and circumstances before him either in the affidavit or in supplemental sworn testimony, there is a fair probability that a felony has been committed and that the person proposed to be arrested is the person who committed it. See Smith v. State, 386 So.2d 1117, 1119 (Miss. 1980). In making this common sense decision, the magistrate should consider the totality of the circumstances before him, including the veracity and basis of knowledge of persons supplying hearsay information. The duty of the reviewing court is to ensure that the magistrate had a substantial basis for concluding that probable cause, so defined, in fact existed at the time the warrant was issued. Put another way, the information furnished the magistrate must not only reflect that the presenting officer charges the person to be arrested with a crime but that he or she has a reasonable basis for doing so.
The instant affidavit fails substantially. It states only that Officer Henley charges J.W. Henry with the burglary. It provides not the slightest clue what that charge is based upon. Specifically, the affidavit fails to reflect whether Officer Henley is making the statements contained therein on the basis of personal knowledge or on the basis of information provided to her by other persons (the record would suggest that she is relying upon information furnished by other persons). Further, I find no underlying facts and circumstances which may have supported the conclusory statements made in the affidavit. Third, assuming that the affidavit is not made upon personal knowledge, the affidavit says nothing about the source of the information nor the reliability of the source. Finally, there is nothing in the record to suggest that any information beyond the details of the affidavit was furnished to the issuing magistrate. See Lee v. State, 435 So.2d 674, 677 (Miss. 1983); Read v. State, 430 So.2d 832, 834-835 (Miss. 1983). Indeed, at oral argument *1219 counsel for the State conceded that no additional information was furnished orally to the issuing magistrate.
Under these facts and circumstances, it is my view that the Court has no alternative but to hold that Officer Henley failed to provide the issuing magistrate, by affidavit or otherwise, sufficient information to undergird a determination of probable cause for the arrest of J.W. Henry. Accordingly, the warrant subsequently issued conferred upon the officers of the Waveland Police Department no authority to effect the arrest of J.W. Henry.

B.
As the affidavit/warrant is legally insufficient, the State must fall back on the alternative position that the police had probable cause for a warrantless arrest. In an arrest context, probable cause determinations break down into two separate and distinct inquiries: (1) whether the arresting officer had reasonable grounds to believe that a felony had been committed, and (2) whether he or she had reasonable grounds to believe that the felony was committed by the person proposed to be arrested. Undoubtedly, the first element is present in this case. The State's analysis by which the second question is considered, however, is somewhat cryptic:
The second element of probable cause, reasonable grounds to believe that appellant committed the felony, was also met. The officers, after arriving at the scene, were able to identify one of the suspects [not J.W. Henry] from information gained from witness Will Hines. (R.49; A.9) Mr. Hines told the officers that Pookie Mercer was at the Grayson home and he also gave them a full description of the vehicle that drove up to the house. From this information the officers were able to connect the appellant [J.W. Henry] to the burglary.
 Brief for Appellee at 10.
The State's analysis glosses over precisely the issue at stake here: How did the police connect J.W. Henry with this crime? The answer is not given in the record, nor in the briefs nor anywhere else insofar as we have been able to determine.
The record reflects that two officers of the Waveland Police Department were involved in the arrest of J.W. Henry. Investigator Robert Tartavoulle merely testified that he arrested J.W. Henry. He never explained how he knew that J.W. Henry was connected with the crime. After the court had already overruled the defense objection to admissibility of the statement and had allowed same to be presented to the jury, Investigator Sandra J. Henley of the Waveland Police Department testified. Officer Henley merely testified that she assisted Officer Tartavoulle in the arrest of J.W. Henry. Officer Henley likewise gave no information as to how she knew J.W. Henry was a likely suspect for this crime.
Under our law an officer may arrest any person without a warrant when he has reasonable grounds to suspect that a felony has been committed and to "believe the person proposed to be arrested to have committed it". Miss. Code Ann. § 99-3-7 (1972). Reasonable grounds to believe that the person proposed to be arrested is an essential ingredient of the officer's authority under this statute. Craft v. State, 202 Miss. 43, 49, 30 So.2d 414, 415-416 (1947); Branning v. State, 215 Miss. 223, 226, 60 So.2d 633, 634 (1952); Rome v. State, 348 So.2d 1026, 1028 (Miss. 1977).
On these facts there is no showing that probable cause existed for a warrantless arrest of J.W. Henry. In saying this, I emphasize my reliance upon the state of the record. Reviewing courts, as are trial courts, are bound to proceed on the basis of facts, testimony and exhibits emanating from the witness stand. We are not at liberty to indulge in speculation or conjecture regarding what might have been proved but wasn't. This is particularly so in this sensitive area of criminal constitutional procedure. Here the State wholly failed to develop the facts and circumstances relevant to a determination of the legality of the arrest  the affidavit and warrant were placed in the record by the defendant. Even though defense counsel expressly cited *1220 Brown v. Illinois, 422 U.S. 590, 95 S.Ct. 2254, 45 L.Ed.2d 416 (1975), in his argument regarding the admissibility of the confession, the prosecution proceeded with the legality of the arrest almost completely undeveloped in the record. We are not at liberty to supply such deficiencies in the record by our own speculations or conjectures regarding what the officers would have testified to had the proper questions been asked.

III.

A.
Given that the arrest of Henry was illegal, the question remains as to how this illegal arrest affects the admissibility of the oral confession he gave during police interrogation. The current state of federal constitutional law on the point is succinctly summarized in Oregon v. Elstad, ___ U.S. ___, 105 S.Ct. 1285, 84 L.Ed.2d 222 (1985).[2]
It is settled law that "a confession obtained through custodial interrogation after an illegal arrest should be excluded unless intervening events break the causal connection between the illegal arrest and the confession so that the confession is `sufficiently an act of free will to purge the primary taint.'" [citation omitted]
___ U.S. at ___, 105 S.Ct. at 1291, 84 L.Ed.2d at 230.
In Dycus v. State, 396 So.2d 23, 26-27 (Miss. 1981) and Hall v. State, 427 So.2d 957 (Miss. 1983) we considered with some care the effect of an arrest without probable cause upon the admissibility of a subsequently obtained inculpatory statement. Following Brown v. Illinois, 422 U.S. 590, 95 S.Ct. 2254, 45 L.Ed.2d 416 (1975),[3] we have rejected a per se rule of inadmissibility. In Hall we identified four factors which ought to be considered by the trial court in determining whether an inculpatory statement has in law been purged of the taint of an illegal arrest. These are:
(1) the temporal proximity of the arrest and the confession;
(2) the presence of intervening circumstances;
(3) the purpose and flagrancy of the official misconduct, i.e., the making of the illegal arrest; and
(4) any other circumstances that seem relevant.
427 So.2d at 959-960.
The majority correctly identifies these factors. Our disagreement arises over their application. I well recognize that the weight to be given each of these factors will necessarily vary with the circumstances of each individual as well as the quality of the evidence regarding each factor. In the end, however, in any Brown-type hearing, the State bears the burden of proof on fact issues within each factor and also the burden of persuasion that the factors suggesting admissibility outweigh those suggesting inadmissibility. See Penick v. State, 440 So.2d at 554; Hall v. State, 427 So.2d at 960.
The majority correctly notes that the temporal proximity of the arrest and the confession was great. J.W. Henry was arrested at 4:55 p.m. His interrogation was concluded at 5:35 p.m. I agree with the majority that the confession followed so quickly on the heels of the arrest that *1221 inadmissibility is strongly suggested. Dunaway v. New York, 442 U.S. 200, 216-219, 99 S.Ct. 2248, 2258-2260, 60 L.Ed.2d 824, 838-840 (1979); Patterson v. State, 413 So.2d 1036, 1039 (Miss. 1982); Dycus v. State, 396 So.2d 23, 26-27 (Miss. 1981).
Second, I acknowledge the presence of one important intervening circumstance. Eight minutes following his arrest, J.W. Henry was presented by Officer Tartavoulle with a standard Miranda Warning and Waiver of Rights Form which he signed.[4] Indeed, the Circuit Court held that the warnings were properly given and that the waiver was executed without threats or coercion. This is a factor suggesting admissibility. See, however, Dycus v. State, 396 So.2d 23, 26-27 (Miss. 1981) where more substantial intervening circumstances were held insufficient to purge a confession of the taint of an illegal arrest.
Third, I concur with the majority that there was no particular flagrancy in the official misconduct, i.e., the making of the illegal arrest. The fact that the arrest was illegal is not alone sufficient to militate against the admissibility of a subsequent confession. Indeed, the very existence of the four factor test as set forth in Brown v. Illinois, 422 U.S. 590, 95 S.Ct. 2254, 45 L.Ed.2d 416 (1975) and adopted in Hall, 427 So.2d at 959-60, presupposes the illegality of the arrest. The question is whether there was purposeful or flagrant misconduct on the part of the police. In the instant case there is no indication of such misconduct nor the lack thereof  the record is largely silent. The lack of evidence, in my view, here deprives this factor of weight.
Fourth, we are to consider "any other circumstances that seem relevant". Hall, 427 So.2d at 960. Here the majority's discussion is inadequate, and qualitatively so. Henry's youth  eighteen years old at the time of his arrest  concededly in and of itself may be a weak factor suggesting inadmissibility under the Brown-Hall test. I regard as far more important Henry's invocation of his privilege against self-incrimination within less than an hour after his arrest  he refused to give law enforcement authorities a written confession. Henry's age coupled with the temporal proximity of his incommunicado interrogation and subsequent inculpatory/statement to his arrest strongly suggest that Henry was substantially affected by the inherently coercive influences of custodial interrogation. See Miranda v. Arizona, 384 U.S. 436, 448-58, 467-69, 86 S.Ct. 1602, 1614-19, 1624-25, 16 L.Ed.2d 694, 708-14, 719-21 (1966). Henry's refusal to give a signed written statement suggests that, though subjected to in-the-police-station custodial interrogation, once he got his wits about him he determined that he should remain silent. These circumstances are persuasive to my mind that, on the facts as they appear in the record, Henry's oral confession was not the produce of free choice. The totality of the circumstances suggest *1222 to my mind that we have before us today a confession involuntary in fact and in law.

B.
There is an institutional problem with the majority's handling of the Brown v. Illinois issue. The majority steps out of our role as an appellate court and proceeds, unmistakably though sub silentio, to act as a trial court, making findings of fact and the whole nine yards. No doubt the majority does this out of frustration over the absence of findings of fact or conclusions of law on the part of the trial judge. Even though Brown v. Illinois was cited by defense counsel, the trial judge ignored it.[5] Indeed, his ruling holding the inculpatory statement admissible proceeds on the assumption that the only issues are whether the Miranda warnings have been given and whether they have been knowingly and intelligently waived. See Jones v. State, 461 So.2d 686, 696-697 (Miss. 1984). The Brown v. Illinois issue and the analysis articulated above is simply not mentioned.
In the present circumstances, respecting our role as an appellate court we recognize that we have no authority to make findings of fact. See Hall v. State, 427 So.2d 957, 960 n. 3 (Miss. 1983). Where none are made by the trial judge, normally the party bearing the burden of proof must fail. Here as explained above the State bears the burden of proof and the burden of persuasion. I would sustain the assignment of error.

IV.
Except as indicated above, I concur in what has been said in the opinion of the majority.
PRATHER and SULLIVAN, JJ., join in this opinion.
NOTES
[1] Prior to trial, Henry moved for an order remanding the charges against him to the youth court. At the hearing on that motion, the circuit judge was presented a copy of a Motion to Dismiss which the State had filed in once parallel youth court proceedings. The birth certificate was attached to that motion and was thus before the circuit court. Indeed, the motion recites

that the said J.W. Henry is over 18 years of age, as shown by the attached birth certificate... .
The birth certificate, however, was not marked as a separate exhibit, nor was it originally a part of the record on this appeal. It has been added to the record via our granting of the State's Suggestion for Diminution of Record.
[1] A careful review of the affidavit form  the specifics are typed into a preprinted affidavit form  makes it apparent that this is the sort of affidavit used in charging persons with the commission of misdemeanors. The form is wholly inappropriate to serve as an affidavit pursuant to which arrest warrants will be issued. The particular defects in the form are its failure to include space for the affiant to specify underlying facts and circumstances as distinguished from mere conclusory statements, the source of any facts or circumstances and factors relating to the reliability of the source.
[2] Oregon v. Elstad is a Fifth  not a Fourth or Sixth  Amendment case. Any inroad Elstad makes on Fifth Amendment rights protected by Miranda have no applicability to Fourth Amendment questions.

... A procedural Miranda violation differs in significant respects from violations of the Fourth Amendment, which have traditionally mandated a broad application of the "fruits" doctrine... . Where a Fourth Amendment violation "taints" the confession, a finding of voluntariness for the purposes of the Fifth Amendment is merely a threshold requirement in determining whether a confession may be admitted in evidence. [citation omitted]
___ U.S. at ___, 105 S.Ct. at 1292, 84 L.Ed.2d at 230.
[3] See also, Penick v. State, 440 So.2d 547, 554-558 (Miss. 1983) considering Brown v. Illinois in the context of a question regarding admissibility of tangible evidence in a search following an illegal detention, and Patterson v. State, 413 So.2d 1036, 1039-1040 (Miss. 1982) considering Brown in the context of a confession emanating from an unlawful search. See also, Lockett v. State, 459 So.2d 246, 250 (Miss. 1984).
[4] The form reads as follows:
 YOUR RIGHTS
 PLACE: WAVELAND POLICE Dept.
 DATE: 11-6-78
 TIME 5:03 p.m.

Before we ask you any questions, you must understand your rights.
You have the right to remain silent.
Anything you say can be used against you in court.
You have the right to talk to a lawyer for advice before we ask you any questions and to have him with you during questioning.
If you cannot afford a lawyer, one will be appointed for you before any questioning if you wish.
If you decide to answer questions now without a lawyer present, you will still have the right to stop answering at any time. You also have the right to stop answering at any time until you talk to a lawyer.
WAIVER OF RIGHTS
I have read this statement of my rights and I understand what my rights are. I am willing to make a statement and answer questions. I do not want a lawyer at this time. I understand and know what I am doing. No promises or threats have been made to me and no pressure or coercion of any kind has been used against me.
 Signed: J.W. Henry
Witness Robert Tartavoulle
Witness Sandra Henley
Time 5:35 p.m.

[5] We have repeatedly urged the trial judges in such circumstances to make findings of facts. See, e.g., Gavin v. State, 473 So.2d 952, 955 (Miss. 1985). While we disagree regarding the merits of the instant assignment of error, I am confident all members of the Court would join in a renewal of this admonition that the trial judges afford us proper findings on Brown, Miranda, and other similar issues.