759 So.2d 422 (1999)
John Christopher WALKER, Appellant,
v.
STATE of Mississippi, Appellee.
No. 98-KA-00388-COA.
Court of Appeals of Mississippi.
November 23, 1999.
*424 Charles E. Miller, McComb, Attorney for Appellant.
Office of the Attorney General by Jean Smith Vaughan, Attorney for Appellee.
BEFORE KING, P.J., DIAZ, AND IRVING, JJ.
IRVING, J., for the Court:
¶ 1. John Christopher Walker was tried in the Circuit Court of Lincoln County and convicted of the murder of Anthony Lloyd. He was sentenced to serve a term of life in the custody of the Mississippi Department of Corrections and ordered to pay court costs and $8,724.56 in restitution to Sondra Lloyd for funeral expenses. Feeling aggrieved, he filed this appeal. The following issues, taken verbatim from his brief, are assigned as error:
I. THE TRIAL COURT ERRED WHEN IT FAILED TO GRANT APPELLANT JOHN C. WALKER'S MOTION TO SUPPRESS STATEMENT, TANGIBLE EVIDENCE (GSR TEST, AND PROJECTILE AND PHOTOGRAPHS.)
II. THE TRIAL COURT ERRED IN ITS REFUSAL TO GRANT JOHN WALKER'S MOTION TO DENY HEARSAY CRAIG OSTER RELATED TO ANY THREATS AGAINST ANTHONY LLOYD.
III. THE EVIDENCE IS WHOLLY INSUFFICIENT TO SUPPORT CONVICTION PURSUANT TO THE INDICTMENT AND SECTION OF THE HOMICIDE STATUTE. FURTHER THE STATE DID NOT PROVE JOHN C. WALKER GUILTY BEYOND A REASONABLE DOUBT SOLELY BY CIRCUMSTANTIAL EVIDENCE WHERE STATE DID NOT EXCLUDE EVERY REASONABLE HYPOTHESIS CONSISTENT WITH JOHN C. WALKER'S INNOCENCE.
IV. THE TRIAL COURT ERRED IN ITS REFUSED [SIC] TO ADMIT TO ALLOW THE TESTIMONY OF RALPH BROTHERN.
V. THE LOWER COURT ERRED IN ITS REFUSAL TO GRANT JOHN C. WALKER'S MOTION FOR JUDICIAL RECUSAL.
Finding no reversible error we affirm his conviction and sentence.

FACTS
¶ 2. The facts, according to the State's proof, are as follows:
¶ 3. During the evening hours of August 1, 1997, Anthony Lloyd was sitting alone at a table in a local night club in Brookhaven called the J & B Club. At some point during the evening, two of his friends joined him. Some time later, Walker and two of his friends came in. One of Walker's friends, Andre Ellis, went to Lloyd's table and either sat and stared at Lloyd, according to one witness, or slammed a chair down and cursed Lloyd, according to another witness. Lloyd left the club hurriedly. He was followed closely by Walker and Ellis. When the other club patrons noticed Walker and Ellis follow Lloyd out of the club they immediately followed also. There was a well-known history of altercations between Lloyd and Ellis, and it was widely believed that the two were going to have a serious confrontation sooner or later. Outside, Lloyd was seen holding a gun and was heard to say to Ellis to "backup" and "let's squash this," all the while backing away from Ellis who was *425 advancing and taunting Lloyd to shoot him. Lloyd then turned away from Ellis and walked in the direction of Lloyd's home. Moments later six or seven gunshots rang out, and Lloyd was fatally wounded.
¶ 4. At least two witnesses, Larry Washington and John Gayten, testified that the sound of the gunfire came from the direction of a building that housed the Tote-It Store. Both witnesses also testified that they saw an individual wearing a striped shirt walk away from that same location. John Gayten was further able to identify Walker by his nickname, Too Sweet, as the person leaving the location from where the shots were fired. Five spent .45 caliber shell casings were later found by the police at the same location. One projectile was recovered from the scene, and one was recovered from the body of Anthony Lloyd. The testimony at trial was that both projectiles were .45 caliber and were fired from the same weapon.
¶ 5. During their questioning of witnesses at the crime scene the police learned of the involvement of Andre Ellis and the individual, wearing the striped shirt, known as Too Sweet. They immediately began a search for Walker and Ellis. They found Walker walking along a nearby street. He was taken in for questioning and given a gunshot residue (GSR) test. He tested positive. Walker gave the police a statement saying that he shot Lloyd because Lloyd "drew down on me." He also said in his statement to the police that the gun he used to shoot Lloyd was a .45 caliber; however, when he was brought in for questioning he did not have a gun in his possession, and no gun has ever been recovered. Other facts necessary to the resolution of certain issues will be presented in the discussion of those issues.

Analysis of Issues Presented

I. Admissibility of Walker's statement to the police and tangible evidence

Standard of Review
¶ 6. Haymer v. State, 613 So.2d 837, 839 (Miss.1993) sets forth the standard of review on this issue as follows:
Our standard of review on such issues is found in Cox v. State, 586 So.2d 761, 763 (Miss.1991), "Findings by a trial court that a confession was voluntary and that the confession is admissible will not be reversed by this Court as long as the trial court applies the correct principles of law and the finding is factually supported by the evidence."
The State has the burden of proving, beyond a reasonable doubt, all facts prerequisite to admissibility ... "[T]his burden is met and a prima facie case made out by the testimony of an officer, or other person having knowledge of the facts, that the confession was voluntarily made without any threats, coercion, or offer of reward." Cox, 586 So.2d at 763.
¶ 7. Walker argues that he was arrested without probable cause. He claims that none of the officers who testified at trial stated that they had probable cause to arrest him. He claims that no evidence was presented to suggest that probable cause existed to arrest him. Therefore, he argues, all of the items obtained as a result of his arrest, GSR test, statement and photos are fruit of the poisonous tree and thus are not admissible.
¶ 8. Walker cites the case of Henry v. State, 486 So.2d 1209 (Miss.1986) as authority. Henry stands for the proposition that whether a confession, obtained after a technically deficient arrest, is admissible should turn on the presence and degree of any police misconduct. Having found no such police misconduct in the Henry case, the decision of the trial court, admitting a confession obtained from a technically deficient arrest, was affirmed. Henry, 486 So.2d at 1214. There was no evidence of police misconduct in the case at bar, nor was the arrest technically deficient.
¶ 9. At the trial of this matter police investigator Nolan Jones testified that *426 Walker was taken into custody for questioning because two witnesses saw him leave the vicinity from where the shots, that killed Anthony Lloyd, were fired. One witness identified Walker by his shirt and another witness identified him by his shirt as well as his nickname, Too Sweet. Spent shell casings were found at the same location. Walker was a known associate of an individual who was involved in a heated confrontation with the victim immediately preceding the shooting. We find these facts constituted a strong case of probable cause to arrest Walker.
¶ 10. Further, there was sufficient testimony at trial by police officer Nolan Jones that Walker freely and voluntarily gave the statement after his rights were read to him and after he signed a waiver of rights form. A Miranda warning form and a waiver of rights form, both signed by Walker, were entered into evidence. Walker alleges that there were conflicts with regard to notations on the signed waiver form as to the time when the Miranda warning was given and the time the statement was given. That may be true, but those conflicts were resolved to the satisfaction of the trial judge. We have examined the record and do not find that he abused his discretion in making such finding.
¶ 11. Having determined that there was probable cause to arrest Walker, we affirm the lower court's decision to admit the gunshot residue test results and all other tangible evidence. This assigned error is without merit, and the findings of the lower court on this issue are affirmed.

II. Did Crieg Oster's testimony constitute inadmissible hearsay?

Standard of Review
¶ 12. Admission of evidence is within the discretion of the trial judge. That discretion must be exercised within the scope of the Mississippi Rules of Evidence, and reversal will only be had when an abuse of discretion results in prejudice to the accused. Parker v. State, 606 So.2d 1132, 1137-38 (Miss.1992).
¶ 13. Lloyd had at one time been an informant for a narcotics agent named Crieg Oster. Oster testified that Lloyd had informed him on no less than four occasions in the month preceding his death (one of the times was just a week before his death) that he, Lloyd, had received death threats from Walker and Ellis. Oster also testified that Lloyd was afraid and that he, Oster, told Walker to do what was necessary to protect himself. Walker argues that the testimony of agent Oster regarding Lloyd's statements to him that Lloyd had received death threats from Walker and Andre Ellis was irrelevant hearsay and should not have been admitted into evidence. The State sought to have the testimony admitted as an exception to the hearsay rule under M.R.E. 803(24) and 803(3). The trial court, citing Parker, ruled that the testimony was admissible because there was no reason to doubt the trustworthiness of the statement as it was given to a law enforcement officer with whom Lloyd had worked as a confidential informant. The trial court further found, relying on Parker and M.R.E. 803(3), that the statements were admissible as evidence of Lloyd's state of mind and was unavailable from any other source. It also found that the evidence was helpful under Rule 102 in the jury's search for the truth.
¶ 14. We are not persuaded that either of the bases relied upon by the trial judge for the admission of Oster's testimony provide an adequate basis for its admission. While evidence of one's state of mind is admissible under M.R.E. 803(3), the evidence of which complaint is made appears to be a combined recitation of Lloyd's state of mind and a recitation of the threats giving rise to his state of mind. Even if we were to hold that the evidence was simply a statement of Lloyd's state of mind, it would still have to pass the relevancy test in order for it to be admissible, and if Lloyd's state of mind were an issue *427 in this case, that would end the matter. However, it is not Lloyd's state of mind but the shooter's identity that is an issue in this case. As stated, the evidence of which complaint is made appears to be a combination of Lloyd's state of mind and acts by Walker giving rise to that state of mind.
¶ 15. At least two jurisdictions have held that such testimony would be admissible when the defense is accidental death or self defense. See, e.g. State v. Langley, 354 N.W.2d 389 (Minn.1984); State v. Magruder, 234 Mont. 492, 765 P.2d 716 (1988). In the case at bar, it is unclear just what Walker's defense was. He did not testify during the trial, and his counsel did not make an opening statement. During voir dire and closing argument, counsel did allude to one's right of self defense and of defense of another. In Walker's statement to the police, he stated that he shot Lloyd after Lloyd "drew down" on him, indicating he shot in self defense. In his brief, Walker argues that he shot Lloyd in defense of Andre Ellis and makes a vague reference to a claim of self defense. In any event, we conclude in the absence of a clearly asserted claim of self defense or accidental shooting, the testimony of Crieg Oster should not have been admitted, and that the trial court abused its discretion in admitting it. However, we hold that the admission of Crieg's Oster's testimony was harmless error beyond doubt because Walker removed any question regarding identity of the shooter when he confessed to firing the fatal shots that killed Lloyd. This issue is without merit.

III. Sufficiency of the evidence.

Standard of Review
¶ 16. In challenges to the sufficiency of the evidence, the standard of review requires consideration of all evidence in a light most favorable to the verdict. Collier v. State, 711 So.2d 458, 461 (Miss.1998). Matters regarding the weight and credibility are to be resolved by the jury. This Court may reverse only where, with respect to one or more of the elements of the offense charged, the evidence is such that reasonable and fairminded jurors could only find the accused not guilty. Id.
¶ 17. Walker argues that the evidence was insufficient to convict him and that his case falls within the purview of the Weathersby rule which requires the jury to accept the defendant's version of events leading to a homicide, if reasonable. He also acknowledges that the Weathersby rule does not apply if substantial evidence materially contradicts the defendant's version through credible witnesses, physical facts or commonly known facts.
¶ 18. Walker gave several versions of the events leading to the homicide so it is difficult to know which version he claims should be accepted for purposes of Weathersby. In his statement to the police he said that he shot Lloyd because Lloyd "drew down on" him. At the trial of this matter, he presented witnesses who said that several persons fired weapons that night and anyone of those persons could have fired the shot that killed Lloyd. In his appeal brief he alleges that he shot Lloyd in defense of Andre Ellis.
¶ 19. Our review of the record reveals substantial evidence presented by the State at the trial of this matter which materially contradicted each of Walker's versions of the events leading to Anthony Lloyd's death; therefore, the Weathersby rule does not apply. Weathersby v. State, 165 Miss. 207, 208, 147 So. 481, 482 (1933).
¶ 20. Additionally, Walker claims that there was only circumstantial evidence and no direct evidence that he deliberately shot Anthony Lloyd. This claim flies in the face of the most direct evidence of allWalker's own statement to the police that he deliberately fired the shots that killed Lloyd. His contradictory after-the-fact explanations and theories about how and why and whether he shot Lloyd did not nullify that statement but simply created an issue which the jury resolved *428 against him. We cannot reverse the jury's verdict because we do not find, with respect to one or more of the elements of the offense charged, that the evidence is such that reasonable and fair-minded jurors would have only found him not guilty. Collier, 711 So.2d at 461.
¶ 21. We find that the jury was presented with substantial and credible direct and circumstantial evidence during the trial of this matter on which to base its verdict. This issue is without merit.

IV. Should the lower court have admitted the testimony of Ralph Brothern?

Standard of Review
¶ 22. The admissibility of evidence rests within the discretion of the trial court. Baine v. State, 606 So.2d 1076, 1078 (Miss.1992). Appellate courts will not reverse a trial court on an admission decision unless the trial court abused its discretion. Parker v. State, 606 So.2d 1132, 1137-38 (Miss.1992). Evidence which is not relevant is not admissible. M.R.E 402.
¶ 23. The proffer of testimony from Ralph Brothern was as follows:
EXAMINATION BY MR. MILLER:
Q. Mr. Brothern, state your name for the record, please.
A. Ralph Brothern.
Q. And on August 3rd, 1997, did you have an occasion to hear a conversation presented to you or some people surrounding you from Edward Leggett?
A. Yes, sir.
Q. What was that communication?
A. Well, I was, you know, I was already in there. And he was, Edward Leggett was talking to Andre Ellis. And he said something about, he said it, like, the guys was all sitting, they was somewhere, they was at somebody house, somebody, one of their friends. And, and, and Anthony Lloyd were there. And somebody come in and said that they be hanging, said where they be at, where they might be. And he said that the guy had already said, well, I'm fixing to go get my gun. And then he said, well, I ain't got nothing to do with that, y'all. He was on his way out of jail. He was being bonded out. And that was pretty much all I heard.
BY MR. MILLER: Thank you. Your Honor, that's my proffer.
BY MR. RUSHING: Your Honor, the State would object to it as being double hearsay.
BY MR. MILLER: Thank you, Mr. Brothern.
BY THE COURT: Thank you, Mr. Brothern. Objection sustained.
¶ 24. This Court is unable to determine what was intended to be conveyed by the proffered testimony. We are, nonetheless, inclined to agree with the State that whatever was intended constituted double hearsay. We also fail to see the relevant nexus. Therefore, we find that the trial judge acted well within his discretion in not admitting this evidence. This issue has no merit.

V. Motion for Judicial Recusal.

¶ 25. Walker alleges that trial court judge, Mike Smith, in the past, has displayed animosity and behaved in a threatening manner toward Walker's trial counsel, Charles Miller, while Miller was conducting a jury trial. He further alleges that the judge's conduct caused juries to be prejudiced against Miller's clients. He alleges that the judge has interrupted Miller's opening statement in a previous trial and has set a time limit on Miller's opening statement while Miller was in the process of conducting his opening statement. Walker offered no specifics or proof or documentation to support any of these allegations.
¶ 26. Walker complains that on February 10, 1998, the trial judge informed Miller that he was required to submit a complete copy of his opening statement to the *429 court by February 13, 1998. Walker alleges that this was done without proper authority or notice since this case was not scheduled to go to trial until February 17, 1998. The record reveals that on February 10, 1998, the trial court required counsel for both parties to submit their opening statements in writing pursuant to URCCC 2.05. Without addressing the question of whether URCCC 2.05 authorizes a trial judge to require this of trial counsel, we find that since the requirement applied equally to both sides it did not evidence bias.
¶ 27. Walker alleges that Judge Smith has repeatedly demonstrated bias by consistently overruling objections by Miller without sufficient legal support. He does not offer this Court any proof of same. He does not point to any biased rulings in the record. He cites the case of Davis v. Neshoba County General Hospital, 611 So.2d 904 (Miss.1992) for the proposition thatwhen obvious personal tension exists between counsel for one of the parties and the judge that would lead reasonable-minded persons to question whether the judge would have personal bias or prejudice toward that partythe judge's recusal is required. However, Walker fails to provide sufficient evidence in support of these allegations as was done in Davis.
¶ 28. In Davis, the evidence was that the judge, as an attorney, had represented the Neshoba County General Hospital trustees for approximately four years prior to the commencement of that trial, and at a time when the hospital vigorously recruited one of the defendants in the case, Dr. Joshi. The judge had participated in an interview of Dr. Joshi and signed the minutes of the meeting during which the hospital stated that it would do everything reasonably possible to help Dr. Joshi build and maintain a successful practice. In addition, the transcript of the hearing on the motion to recuse revealed interchanges between the judge and Davis's attorney, Laurel G. Weir, that reflected great personal "tension," which appeared to stem from a previous case during which Weir accused the judge of being racially biased. Davis, 611 So.2d at 905. The judge resolved the recusal issue against Davis. In other words, the judge decided that the evidence was insufficient to overcome the presumption of his impartiality. As an aside, he noted that a prior recusal had caused great inconvenience to the court and to the special judge who heard the case. Id.
¶ 29. The issue for the Davis court to resolve was not whether the judge committed any wrongdoing, for example, by acting partial or biased. Rather, the issue was whether a reasonable person, knowing all the circumstances, would harbor doubts about the judge's impartiality. Id. at 906. The Davis court resolved that issue in the affirmative and held that the judge's former representation of the hospital created a conflict of interest which would lead a reasonable-minded person to question the judge's ability to be impartial. It further held that the personal tension which obviously existed between Weir and the judge would lead a reasonable-minded person to question whether the judge would have "a personal bias or prejudice concerning a party" (i.e., Weir's client). Id. In sum, the court held that the judge manifestly erred in refusing to recuse himself in that case under those particular facts and reversed and remanded on that issue. Id.
¶ 30. We find some efficacy in the Davis decision, but we are unable to grant any relief because Walker, while making many blanket allegations of past biased conduct by the trial judge toward his counsel, does not cite a single instance with any specificity. He does not give the style or case name of any case, nor does he provide any facts or documentation, such as a transcript of the exchanges, in support of any of those allegations. Walker states that he is an African American male, and that Judge Smith has consistently demonstrated a bias and inability to be impartial in cases involving African American males. However, Walker offers no proof or documentation to back up that allegation.
*430 ¶ 31. Finally, Walker cites Canon 3(C)(1)(a), Mississippi Code of Judicial Conduct which provides as follows:
A Judge Should Perform the Duties of His Office Impartially and Diligently
C. Disqualification.
(1) A judge should disqualify himself in a proceeding in which his impartiality might reasonably be questioned, including but not limited to instances where:
(a) he has a personal bias or prejudice concerning a party, or personal knowledge of disputed evidentiary facts concerning the proceeding;
¶ 32. Bryan v. Holzer, 589 So.2d 648, 654 (Miss.1991) holds that the standard by which this Court determines if a judge should have disqualified him or herself is an objective standard under Canon 3. "A judge is required to disqualify himself if a reasonable person, knowing all the circumstances, would harbor doubts about his impartiality." Rutland v. Pridgen, 493 So.2d 952, 954 (Miss.1986); Jenkins v. State, 570 So.2d 1191 (Miss.1990); Collins, 543 So.2d at 166. The presumption is "that a judge, sworn to administer impartial justice, is qualified and unbiased. To overcome the presumption, the evidence must produce a `reasonable doubt' (about the validity of the presumption) ." Turner v. State, 573 So.2d 657, 678 (Miss. 1990). When a judge is not disqualified under the constitutional or statutory provisions, "the propriety of his or her sitting is a question to be decided by the judge, and on review, the standard is manifest abuse of discretion." Ruffin v. State, 481 So.2d 312 at 317 (Miss.1985).
¶ 33. In the case sub judice, Canon 3 provides the only applicable grounds for possible recusal. Under the appropriate standard, the judge is presumed qualified and unbiased. This presumption may only be overcome by evidence showing beyond a reasonable doubt that the judge was biased or not qualified. If a reasonable person, knowing all the circumstances, would doubt the judge's impartiality, the judge is required to recuse him or herself from the case, but the decision not to recuse is reviewed by this Court under a manifest abuse of discretion standard. Bryan v. Holzer, 589 So.2d at 654. We do not find evidence in the record sufficient to support the conclusion that the trial judge abused his discretion. This issue is without merit.
¶ 34. THE JUDGMENT OF THE CIRCUIT COURT OF LINCOLN COUNTY OF CONVICTION OF MURDER AND SENTENCE OF LIFE IN THE CUSTODY OF THE MISSISSIPPI DEPARTMENT OF CORRECTIONS AND PAYMENT OF COURT COSTS AND $8,724.56 TO SONDRA LLOYD FOR FUNERAL EXPENSES IS AFFIRMED. ALL COSTS OF THIS APPEAL ARE ASSESSED TO THE APPELLANT.
McMILLIN, C.J., KING AND SOUTHWICK, P.JJ., BRIDGES, DIAZ, LEE, MOORE, PAYNE, AND THOMAS, JJ., CONCUR.